## CHARLES WHITE v. MID-CITY MOTOR CO., INC., et al.—284 S. W. (2d) 689.

Eastern Section. March 15, 1955.

Petition for Certiorari denied by Supreme Court, November 7, 1955.

O. M. Tate, Jr., of Knoxville, for complainant-appellee Charles White.

H. K. Williams, Jr., of Knoxville, for defendant-appellant, Mid-City Motor Co.

McAMIS, P. J.    The bill was filed to cancel and rescind a conditional sales contract and notes executed by complainant in the purchase from the defendant Mid-City Motor Company of a second-hand automobile and to recover the amount paid under the contract. The theory of the bill, sustained by the Chancellor, is that the failure of the seller to comply with provisions of the Tennes-

see Motor Vehicle Title and Registration Law, Code, Sec. 5538.148 et seq., constituted a breach of an implied warranty of title under the Uniform Sales Act, Code, Sec. 7206, entitling the buyer to rescind. That Act, Code, Sec. 7262, provides:

"Remedies for breach of warranty.—(1) Where there is a breach of warranty by the seller, the buyer may, at his election: * * *

"(d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them to the seller and recover the price or any part thereof which has been paid."

Under Section 7206, there is an implied warranty on the part of the seller that he has the right to sell the goods; that the buyer shall have and enjoy quiet possession of the goods as against any lawful claims existing at the time of sale and that the goods were free of any charge or encumbrance in favor of any third person.

The material facts as found by the Chancellor are: Mid-City Motor Company purchased the automobile in question in January, 1952, from James Lawson who had previously made application for, but had not obtained a certificate of title from the Division of Motor Vehicles. Lawson assigned and delivered a copy of his application to Mid-City. Mid-City promptly paid out of the amount due Lawson the balance owing Commercial Credit Company on the car. However, when Lawson's certificate of title was finally issued on April 22, 1952, the Division of Motor Vehicles mailed it to Commercial Credit Company presumably because it appeared in the application as a lienholder. For some reason unexplained Commercial Credit Company, though its lien had been satisfied, retained the certificate until June, 1953, a period of more than a year.

In the meantime and in July, 1952, the car was sold by Mid-City to complainant who took title for his son, a minor. The son in January, 1953, took the car to Detroit, Michigan, where he obtained employment. In February, 1953, the Police Department of Detroit seized the car because the son had no certificate of title and impounded it under the authority of Michigan law, and it remained impounded until after complainant discontinued making installment payments owing Mid-City in June, 1953. Thereafter, by agreement, it was brought to Tennessee and sold, the proceeds being applied on complainant's notes. The present action was filed September 19, 1953.

As the Chancellor found, complainant and his son advised Mid-City of the impoundment of the car, as well as the reason therefor, and requested that it clear the title. Mid-City it appears continued to assure complainant that a certificate would shortly be obtained and made some slight efforts to do so but no effective action was taken, with the result that complainant finally lost hope of getting a certificate and refused to make the June, 1953, payment. In the meantime, complainant himself had applied for a certificate based upon his bill of sale from Mid-City and the assigned copy of Lawson's application but his applications were denied by the Division of Motor Vehicles because the title was outstanding in Lawson's name.

Did Mid-City have a lawful right to transfer the car without a title card and with the title outstanding in Lawson's name and showing a lien in favor of Commercial Credit Corporation? The answer is to be found in a proper construction and application of the Motor Vehicle Title and Registration Act. Section 48 of the Act, Code, Sec. 5538.148, is as follows:

"(a)   In order to transfer title to any motor vehicle coming within the title provisions of this act, the owner shall endorse an assignment and warranty of title upon the certificate of title, if in his possession, for such vehicle with a statement of all liens or encumbrances thereon, which statement shall be verified under oath by the owner, and he shall deliver the certificate of title and title card to the purchaser or transferee at the time of delivering the vehicle, except as hereinafter provided in section 57.*

"(b)   Any owner desiring to transfer title to any motor vehicle coming within the title provisions of this act, whose certificate of title is being held by a lien or, may, in lieu of executing the assignment provided on the reverse side of his certificate of title, execute and deliver to the transferee a separate bill of sale which shall show the name and address of the lienor in whose possession his certificate of title is being held and all such other information as may be required by the reasonable rules and regulations of the commissioner, and which bill of sale shall be signed by the seller, whose certificate shall be acknowledged before a notary public, *together with his title card.*"   (Italics ours.)

Code, Sec. 5538.152, Section 52 of the Act, in part provides:

"(b)   Where the certificate of title is held by a lienor and title has been transferred by bill of sale in lieu of an assignment and warranty as provided on the reverse side of the certificate of title, the division, upon receipt of a properly executed bill of sale *accompanied by the transferor's title card* and the required fee and when satisfied as to the genuineness and regularity of the said bill of sale and the right of the transferee to a certificate

---

*Section 57 exempts sales of automobiles to be dismantled.

of title, shall procure the said certificate of title from the lienor in whose possession it is being held for the sole purpose of transferring ownership and the division shall then return a certificate of title to the lienor from whom it was obtained and forward the title card to the new owner. (Italics ours.)

''(c) The division, upon proper receipt of all the necessary applications, papers and information required showing title to a motor vehicle to have been transferred as provided by the provisions of section 51, paragraph (b) (5538.151) of this act and upon the payment of the required fee and when satisfied as to the genuineness and regularity of said transfer and the right of the transferee to a certificate of title, shall issue a new certificate of title in the name of the new owner as upon an original application and shall further make demand on the holder or holders of the old certificate of title and title card to surrender the same to the division forthwith, if the said certificate of title and/or title card does not accompany the application. (1951, ch. 70, sec. 52.)''

Section 55 of the Act, Code, Sec. 5538.155, makes it a misdemeanor ''for any person to fail or neglect to properly endorse or deliver any certificate of title or title card to the division, a transferee, or other person lawfully entitled thereto.''

Under Code, Sec. 5538.152 (b), above quoted, where there is no assignment of the certificate of title because it is being held by a lienor and, in lieu thereof, the seller executes a bill of sale, as in this case, the buyer may obtain a certificate from the Division ''upon receipt of a properly executed bill of sale *accompanied by the transferor's title card*'' provided the Division is satisfied as to the right of the transferee to a certificate of title. No such card accompanied the bill of sale from Mid-City to

complainant and we think it follows that Mid-City attempted to transfer title in violation of the statute unless, as insisted, it is protected by Code, Sec. 5538.150 providing:

"Transfer to dealers.—When the transferee of a vehicle is a dealer who holds the same for resale and lawfully operates the same under dealer's registration plates, such transferee shall not be required to obtain a new registration of said vehicle or be required to obtain a new certificate of title but such transferee, upon transferring his title or interest to another person, shall execute an assignment and warranty of title upon the certificate of title, if in his possession or if in the possession of lienor, or he shall execute a bill of sale and deliver the same to the person to whom such transfer is made, together with his evidence of ownership, which assignment or bill of sale shall be acknowledged before a notary public. (1951, ch. 70, sec. 50.)"

It will be noted that this Section refers to obtaining a *new* certificate and to the transfer of the dealer's evidence of ownership. We think it is to be inferred that there is contemplated a case where a certificate is in existence and a title card is in the possession of the dealer as a part of his "evidence of ownership". Recognizing that the dealer has the car for sale, this Section relieves him of the duty of obtaining in his own name a new certificate but not of the duty of placing evidence of ownership in the hands of his transferee. Otherwise construed, the Act would relieve a dealer of doing what the Act requires of all other persons and place upon purchasers from dealers the obligation of seeing that the dealer's transferor had proper evidence of title. We will not lightly ascribe to the Legislature a purpose to thus favor dealers at the expense of those with whom they deal.

The Section applying to dealers is followed by Section 5538.152 requiring, in the absence of an assignment of the certificate, that the bill of sale be accompanied by the title card. The latter Section makes no exception in this regard to sales under bills of sale by dealers.

■ If we are correct in so construing the Act, it results that, under Code, Sec. 5538.155 making it a misdemeanor to fail to deliver a certificate to the transferee, Mid-City had no right to sell the car without such certificate and in attempting to do so it breached an implied warranty, Code, Sec. 7206 (1), that it had the "right to sell the goods."

The breach of such warranty gives the buyer the absolute right to rescind. True v. J. B. Deeds & Son, 151 Tenn. 630, 271 S. W. 41.

■ As the Chancellor well said, the duty of Mid-City to clear the title was both an initial and a continuing duty. It cannot, in our opinion, rely upon the use of the car by complainant and his failure to give notice of his election to rescind and return the car as cutting off the right of rescission while it defaulted in its duty to perfect the title and continued to assure complainant that the title would soon be cleared. The damaging effect of the sale of the car in violation of the statute was not brought home to complainant until the car was seized and it then became impossible to return it. Mid-City meanwhile continued to benefit by complainant's payments on the notes. (It seems to us complainant showed rather remarkable forbearance in continuing to make payments while getting no benefits from the car.)

■ Nor can we agree that complainant's loss was due to the act of his son in taking the car without permission of the lien-holder to Michigan, where it was impounded. If the car had remained in Tennessee it could not have

been lawfully operated without a certificate of title. Code, Sec. 5538.127.

We find no error and it results that the assignments of error must be overruled and a decree rendered for complainant. Costs will be taxed to defendant and surety on the appeal bond.

Hale and Howard, JJ., concur.