BERT BROWN MOTORS, INC., Plaintiff in Error, v. W. L. KEEDY, Defendant in Error.—346 S. W. (2d) 280.

Eastern Section. November 1, 1960.

Certiorari Denied March 10, 1961.

Goins, Gammon & Baker, Chattanooga, for plaintiff in error.

Crawford Bean, Chattanooga, for defendant in error.

McAMIS, P. J.  This is an action for breach of warranty growing out of the sale of a 1955 Studebaker automobile by Brown Motors, Incorporated, to the plaintiff W. L. Keedy.  The Circuit Judge, sitting without a jury, found that plaintiff had been unable to obtain a certificate of title for the car from the Motor Vehicle Title Division of the State Department of Finance and Taxation and rendered judgment for $1316.10, the amount plaintiff had paid for the car, plus $750 punitive damages.

The defendant has appealed insisting the failure of plaintiff to obtain a certificate was not due to any defect in title or default on its part but resulted from his refusal to sign the forms required by the Motor Vehicle Title Division and that, in any event, the infliction of punitive damages is not warranted by the proof.

Defendant, an automobile dealer of Chattanooga, acquired the automobile in question from Jack Wilson, a resident of Georgia. Because Georgia is a "non title" state, Wilson had no certificate of title. He executed and delivered to defendant, however, a notarized bill of sale and also assigned and delivered the Georgia license and number plates. These documents showed the correct motor number, V325325, and there is no insistence that Wilson did not have a perfect title to the car or that defendant failed to acquire a perfect title. The whole difficulty grows out of the fact that the serial number or identification number originally affixed to the body of the car, unknown to defendant and probably because of a wreck, had been lost while in Wilson's possession.

On November 26, 1956, defendant sold and delivered the car to plaintiff, a resident of Sequatchie County. On that date, it executed and delivered a proper bill of sale and also delivered to plaintiff the Georgia license, properly assigned by Wilson, and Wilson's bill of sale to it. Plaintiff was instructed to take these documents to the County Court Clerk of Sequatchie County and make application for a Tennessee title certificate. For some reason, plaintiff delayed doing so until March 2, 1957, when he delivered the above mentioned documents to the Clerk and signed an application for a certificate of title. In due course, the Clerk forwarded the application and documents to the Motor Vehicle Title Division. No action seems to have been taken by the Division until December 19, 1957. On that date, the Division rejected the application and returned it to plaintiff along with the attached documents.

The record fails to show on what date plaintiff learned of the rejection of his application and complained to defendant. But there is no dispute that when defendant learned of the rejection it inquired of the Division and was advised that the reason for the rejection was the failure of plaintiff's application to give the serial or identification number. Mr. Fleming, Division Supervisor of Automobile Title Production, testified as a witness for defendant that the Division had changed its policy to require identification numbers instead of motor numbers but the date of this change is not shown except as it may be inferred from the fact that it applied to 1955 and subsequent models. As to whether the change was announced between the date of the sale to plaintiff and the date of his application there is no proof, although either party could have established the date of the change by asking Mr. Fleming.

When defendant learned of the difficulty it assigned to its Mr. Robinson the task of clearing the way for plaintiff to obtain a certificate of title. We think the record fairly shows that Mr. Robinson showed as much diligence and speed as plaintiff did in applying for a certificate. He first contacted the Division by long distance and when this became too expensive began corresponding to find out what steps would have to be taken to get a certificate. When he was advised by telephone on January 16, 1958, to obtain a pencil tracing of the identification number he went to plaintiff's home in Sequatchie County for this purpose but upon inspection found the number missing. On February 12, 1958, he so advised the Division by letter. On February 26, 1958, the Division wrote him:

"If you will return the rejected application and supporting documents in the name of W. L. Keedy along with a notarized statement to the effect that the identification number has been removed and you are unable to obtain an identification number, we will assign a number by which to identify this vehicle. The owner will be authorized to have this assigned number placed on his vehicle for identification purposes."

When plaintiff was contacted he stated he was unable to find the original rejected application and attached documents although it later developed they were in the file of his attorney. Mr. Robinson then prepared, as required by the Division, form RS-1 and informed plaintiff that it was necessary that he, as the owner of the car, sign this form and send it along with the required affidavit showing the number to be missing from the car to the Division in Nashville. Plaintiff refused, saying he "wasn't signing nothing". This conversation was sometime before March 24, 1958, when Robinson wrote the Division that plaintiff had refused. On May 12, 1958, this suit was instituted.

Mr. Robinson testified that when he visited plaintiff's home in February, 1958, the car had license plates on it and plaintiff told him he had been operating it. Plaintiff made no denial that he told Robinson he had been using the car up to that time.

Mr. Fleming testified that if plaintiff had executed and returned form RS-1 with the proper affidavit and the documents submitted with the original application a proper certificate would have been issued. If plaintiff had done so, in view of the fact that he continued to use the car, although illegally, his only loss would have been the

time required to supply the Division with the necessary information. As the matter stands, he had the use of the car at least until about the time he refused to sign form RS-1 and instituted suit and he still has the car with a perfect title while defendant is required by the judgment to fully reimburse plaintiff for the amount paid and, in addition, must pay $750 as punitive damages.

██ ██ Since plaintiff was the owner of the car, the application for a certificate of title could only be made in his name. It is the duty of the seller to give the purchaser a car to which the seller has a good title and for which the purchaser can obtain a certificate of title enabling him to operate the car in Tennessee. The burden of proof was upon plaintiff, however, to show a breach of this duty. There was no breach with respect to the title. Defendant, the seller, had a perfect title which it properly transferred to the plaintiff. As shown, there is no proof that, on the date of sale, the Division required that applications for certificates of title show the identification number instead of the motor number. But, if we assume this change in policy occurred before the sale, the absence of the number was of minor importance because under regulations of the Division, it could be supplied and a certificate issued.

██ This is not a case like White v. Mid-City Motor Co., 39 Tenn. App. 429, 284 S. W. (2d) 689 and Shaeffer v. Richard, 43 Tenn. App. 205, 306 S. W. (2d) 340, in both of which the seller failed to place in the hands of the purchaser documents which only the seller could furnish making it impossible for the purchaser to obtain a certificate of title. In both, the purchaser was induced to keep the car rather than seek rescission by promises of

the seller to take the necassary steps to enable the purchaser to obtain a certificate of title. In this case the purchaser delayed making application for months and continued to use the car after being advised that it bore no identification number, while the seller seems to have been doing everything possible to enable the purchaser to obtain a title and when these efforts were about to succeed the purchaser himself refused to cooperate and brought suit.

██ Under such circumstances, we can find no basis for allowing a rescission and have reached the conclusion that the learned trial judge was in error in rendering judgment for the plaintiff. The judgment is, accordingly, reversed and the suit dismissed. However, on the premise that defendant possibly should have checked the car for the identification number before delivering it to plaintiff, in the exercise of our discretion, the costs of both Courts will be taxed to defendant.

Hale and Cooper, JJ., concur.