Estate of Peabody : Estate of Peabody and others, Appellants, vs. Lawrence College and others, Respondents.

*March 6—June 24, 1935.*

For the appellants there were briefs by *Bradford, Bradford & Derber* of Appleton, attorneys, and *Theodore W. Brazeau* of Wisconsin Rapids of counsel, and oral argument by *Mr. Brazeau* and *Mr. A. S. Bradford.*

For the respondents there was a brief by *Ryan, Cary & Ryan,* attorneys for the Young Men's Christian Association, *Frank & Pelkey,* attorneys for Lawrence College, and *Alfred C. Bosser,* attorney for the city of Appleton, and oral argument by *Heber H. Pelkey.*

The following opinion was filed April 30, 1935:

FAIRCHILD, J. The amount of compensation for trustees' services when the trustees are bound to conduct a business as well as perform other duties cannot always be fixed by a percentage of income. There may be instances where compensation would be just even in the absence of income. The Peabody will gives to the trustees broad powers in the management and control of the estate intrusted to them. It places upon them the duty of carrying out plans devised by the testator in relation to the conduct of the business of the Pettibone-Peabody Company, a mercantile concern owned largely by the estate, and, in addition, plans of a more intimate nature in providing annuities and in the matter of devising methods for establishing and assisting institutions which the testator regarded as of value to the community

life of his home city. In the will, in paragraphs 14 and 15 of article 6 of the trust provisions therein, the testator provides:

"My trustees shall be paid reasonable compensation of said trust estate, the amounts of the same to each of said trustees to be fixed within reasonable limits, by agreement of all of said trustees, and in case of their inability to so agree, said compensation shall be fixed by the county judge of Outagamie county, Wisconsin."

"I direct that said trustees, or either of them, or their successors, be not required to give any bond or other security whatsoever for the faithful performance of their trust or for any other purpose."

He also directs that the trustees be empowered to do all things in the same manner and with as full power as he (the testator) might do if living. They are empowered to deal with and dispose of said property or any part thereof; to do any act directed "without application to or leave or order of any court whatsoever." The terms and provisions of the will make it apparent that the testator was contriving a scheme under which purposes cherished by him would be carried out by trustees chosen by him because of their understanding of and sympathy with his plans and because of his trust and confidence in the persons named as trustees, individually and collectively. The evidence taken upon the hearing of the objections to the trustees' reports discloses a desire on the part of the testator to have Dr. Hoyt and Mr. Coulter, two of the original trustees, accept the responsibilities of the trusteeship. It is quite obvious that Mr. Peabody was organizing an agency which he expected would carry out his wishes in the matter of providing for the objects of his bounty, and that he desired to have in the service of the agency individuals who were so related to him and his enterprises as to be most likely to undertake in good faith the accomplishment of the results desired.

The necessities of the situation may from time to time present difficult questions. However this may be, the individuals acting as trustees must take charge of the corporation. The estate owns most of the stock, but there are other interests. The corporation as an entity and the relation of directors to stockholders must be respected. The circumstances, however, which condition the precise proposition before us, do not require us to treat with the responsibilities of the trustees to the stockholders in the corporation other than the trust estate. We are only concerned with the question of reasonableness of compensation charged by the trustees as it affects the trust estate. The testator, as has been pointed out, provided for their reasonable compensation. He authorized them to fix this compensation within reasonable limits and directed that in the event of the inability of the trustees to agree, the question should then be submitted to the county judge of Outagamie county. The appellants are primarily trustees. We are of the opinion that the fact that there is included in the status of the trustees their activities as officers of the corporation, and the associated fact that the authority exercised by them was by reason of their selection by the testator to discharge the testamentary trust, were not given full consideration below.

The character and powers of a trusteeship, the relation of such position to all duties imposed and the accompanying responsibilities must be recognized as the premise from which appellants' obligations to the trust arise and upon which the right to compensation and the extent thereof must be justified. In the trial of this case an effort was made to determine what, if any, duties were performed by the trustees as a basis of fixing their fees outside of the services performed in connection with the management of the mercantile business of the Pettibone-Peabody Company. The trustees are required to operate the business. In their method of bookkeeping and

accounting, this branch of their duties has been considered as a separate item of service, and because of the corporate entity and the existence of other interests, some distinction between it and the balance of the services rendered as trustees should be made. The trustees may be required to act as manager, president, or director in keeping the business moving effectively, but all the time they are trustees, acting as such, and are accountable as such. *Norris v. Bishop,* 207 Ky. 621, 269 S. W. 751; *Perkins' Appeal,* 108 Pa. 314, 56 Am. Rep. 208; *In re Froelich's Estate,* 122 App. Div. 440, 107 N. Y. Supp. 173, affirmed 192 N. Y. 566, 85 N. E. 1110. The services and total compensation must therefore be treated under some method of accounting in which the trusteeship is the dominant element. For when all is said and done, the trusteeship exists for the benefit of the trust estate. "An administrator or executor is ordinarily confined to the fees or commissions prescribed by the statute, and, if the business of the decedent be continued under authority contained in the will, the services rendered by the executor in continuing it are deemed part of the duties of his office, and he cannot receive therefor any other than the compensation allowed by law." *In re Froelich's Estate, supra.* The trial court seems to have been controlled or strongly moved to his decision by the custom of trust companies, when acting as trustees, of charging for their services at the rate of five per cent of the income from the estate. That method or measure of arriving at a compensation is often used. The statutes in some states provide for it. But even in those states, extraordinary services performed by a trustee may warrant additional compensation. The reckoning by a percentage basis is only used for its convenience; the question is not one of percentage, but of compensation for "responsibility incurred and labor expended." *Montgomery's Appeal,* 86 Pa. 230; *Vastine's Estate,* 190 Pa. 443, 42 Atl. 1038;

*Harrison's Estate,* 217 Pa. 207, 66 Atl. 354. This subject is covered in 2 Perry, Trusts and Trustees (7th ed.), § 919a, and it is said:

"In states where there is no fixed statutory rate of compensation for trustees, it is usual to allow commissions for the ordinary service of trustees, and the tendency is for the rate of commissions to become customary, but this method of reckoning compensation is only for convenience; and where exceptional circumstances show that the compensation reckoned in this way is too large or too small, the rate will be varied or another method of reckoning may be employed. The elements which determine proper compensation are the amount of risk and responsibility and the time and labor required of the trustee and actually spent in the performance of his duties. The guiding principle is to give the trustee a reasonable recompense only, not a profit."

See also 3 Bogert, Trusts and Trustees, § 578; Restatement, Trusts (Proposed Final Draft Nos. 1 to 5), § 234, comments b and c.

As trustees, appellants are charged with the responsibility of operating a business. At least two of them must be on the board of directors and one is to "retain an active part in the management of said business so long as they or my estate hold a majority of the stock in said company."

The accomplishment of things the testator desired to have accomplished by his trustees, and indeed, the possibility of completing some of the bequests, including those to objectors, depended very largely upon the successful management of the business. The testator sought to preserve at all times during the existence of the trust, an *esprit de corps,* and to maintain an established policy for he wrote into his will the provision "that in the case of the death or resignation of any of my trustees, a successor or successors shall be appointed by the remaining trustee or trustees. . . ." The will creates a diversity of duties; it places upon one or more trustees

services not required of another. This in turn brings occasion for a difference in compensation. When this compensation is fixed by the trustees within reasonable limits, no valid objection can exist. Under the plan followed by the trustees of dividing the responsibilities and services, they assessed compensation for what amounts to exceptional and extraordinary services rendered by either trustee, as salary against the Pettibone-Peabody Company. During the period here involved, Mr. Neller, as manager of the corporation, drew $12,000 per year; Mr. Coulter, as president and director, drew $4,800 per year; and Dr. Hoyt, as vice-president, drew $1,200. In addition to these items, the trustees have annually agreed upon a further sum for compensation which for a number of years has been fixed at $2,000. If the total for all these services is a reasonable allowance for the service rendered to the estate by all trustees, there ought to be no interference with it regardless of how it is divided by them between themselves.

To deal justly with a trustee, any plan to be followed in determining compensation must take into consideration the responsibility, time and labor, and character of skill required of the trustee in the performance of all his duties. Two of the trustees are not residents of Wisconsin. They have, however, accepted this trust and so far as the accomplishment of the purposes of the testator are concerned, appearing from the record before us, they have proceeded with considerable success. While the trial court, in his decision, did not give his unqualified approval to the management by them of the affairs of the estate, he did say: "I feel that this trust estate on the whole has been managed fairly well under the conditions existing and that many of the bequests have been paid already and there is a substantial estate left." The evidence indicates that the net value of the estate on August 1, 1910, when the trustees took charge, was approximately $154,000. The present net worth of the estate as shown by

the reports particularly under consideration in this controversy is considerably higher than it was when the trustees began their services. Trustees' fees and expenses of administration have been paid and at least $136,500 in legacies under the terms of the will duly distributed.

This appeal attacks that part of the judgment requiring the appellants to repay to the trust estate the sum of $12,603.53, the amount held to be in excess of reasonable compensation. As has been said, in approaching this question consideration must be given to the whole field of operation in which the trustees acted including the elements of risk assumed, responsibility, service, and time and labor actually spent in the performance of duties arising out of the acceptance of the trust. Because the full scope of the trusteeship was not treated as an entirety, the determining questions have not been subjected under the proper theory to the examination which a full recognition of the bearing of the correct premise demands. The interlocking of service and benefit in the trusteeship between the management of the Pettibone-Peabody Company and the duties which may be said to be the usual trustee's duties are to be considered as one in any final determination and fixing of the trustees' fees. If their time and services as trustees in the interest of the Pettibone-Peabody Company, which is in reality but a branch of the trusteeship, plus their other services as trustees warrant the charges made by them and such charges are within the rule fixed by the testator for determining such compensation, objections must fail. The duties of the trustees are to do all things necessary in the conduct of the business. The terms of the will not only require the preservation of the corpus of the estate as it came to them, but impose a duty in the way of an effort to increase it. The nature of the property and the necessity of conducting the business may cause difficulty in the apportionment of the capital and income, but the services of the trustees and each of them, and the reason-

able value thereof can be ascertained. An attempt to divide the services of the trustees between acting as directors of the business of the corporation and managing the balance of the estate will more than likely result in an overlapping of work or charges which may result either in double fees or in an unfair deduction from an otherwise fair amount.

We are attempting here to state only the general principles which must be applied in dealing with a situation such as is here presented. Because we are of the opinion that the real issue involved has not been tried, we refrain from expressing any opinion on the details of the judgment entered below and remit the matter to the county court to consider the petition and objections upon the basis here outlined. The appellants to have the costs of this appeal payable out of the estate; other items of expense of parties involved to be determined on the new trial of the issues.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with the opinion. Appellants to have costs of this appeal payable out of the estate.

Rosenberry, C. J., took no part.

A motion for a rehearing was denied, with $25 costs, on June 24, 1935.