ESTATE OF BECKER (Roy J.) : BECKER (Carl R.) and another, Trustees, Appellants, v. BECKER (Joseph, Jr.) and another, Respondents.

*No. 139. Argued October 30, 1972.—Decided November 28, 1972.*
(Also reported in 202 N. W. 2d 681.)

For the appellants there were briefs and oral argument by *James R. Mattison* of Milwaukee.

For the respondents there was a brief and oral argument by *Ray T. McCann* of Milwaukee.

BEILFUSS, J. The contentions of the appellants-trustees raise the following issues:

1. Does the county court have subject matter jurisdiction of this proceeding?

2. Did the trial court properly deny the trustees' motion for summary judgment, motion to quash, and the plea in bar?

The facts as they appear in the pleadings, affidavits and documents in support and in opposition to the motions are as follows:

J. H. Becker & Sons, Inc., is a corporation which owns and operates a funeral home in Milwaukee, Wisconsin. The founder, J. H. Becker, Sr., died in 1949. After his death all of the corporate stock (250 shares) was owned and held in equal proportions by his five children, Roy J. Becker, Joseph A. Becker, Carl R. Becker, Mary Helen Peters and Louis A. Becker. These children were not only the sole stockholders but each one was a directer and officer of the corporation.

Roy J. Becker, the president of the corporation, died on July 21, 1965. He had never married and left a will which, after providing for a few relatively minor bequests, created a testamentary trust with two major objectives. He was "anxious to have one of . . . [his] nephews engage in . . . [his] profession to wit: that of mortician." One of his nephews, Charles J. Peters, III, had completed his education and training as a mortician and was employed by the corporation as a *mortician* at the time of the testator's death. The county court held that Charles J. Peters, III, qualified under the terms of the will and that upon the termination of the trust he was to receive all of the stock of the testator in the corporation. The will further provided that income of the trust (if not needed for the education of the nephew who qualified as a mortician) was to be divided annually and equally among his remaining twelve nieces and nephews. The trust is to terminate in 1975 and the corpus is likewise to be distributed to the remaining nieces and nephews.

The appellants, Carl R. Becker, an attorney and a stockholder, and Mary Helen Peters, a stockholder, were named executors and trustees.

The net estate after the payment of the specific legacies, debts, inheritance tax and costs of administration was approximately $250,000. The stock in the Becker corporation was appraised at $50,000.[1]

On November 10, 1965, the four remaining directors of the corporation executed new employment contracts for themselves. Carl R. Becker and Mary Helen Peters voted as executors of the Roy A. Becker estate as well as in their individual capacity. It is also claimed that Carl R. Becker usurped the functions of president of the

[1] The final account of the executors was filed in December of 1966, and letters of trust issued at the same time. The executors were discharged in January, 1969. This proceeding was commenced shortly thereafter.

corporation by designating himself chairman of the board, a nonexistent position.

These contracts called for a yearly salary of $30,000 to be paid to Louis A. Becker, Joseph A. Becker and appellant Carl R. Becker, and a yearly salary of $10,000 to be paid to appellant Mary Helen Peters, all commencing on January 1, 1966. The contracts also provided for an annual bonus of five percent of the gross sales of the corporation to be paid to Louis A. and Joseph A. Becker; plus the contracts required the corporation to pay health and life insurance premiums for the four directors-officers.

For comparison purposes, the records of the corporation on file herein reveal the following compensations paid by the corporation in the years 1964, 1965 and 1966:

| Person | Salary | Bonus | Dividend |
|---|---|---|---|
| **Roy J. Becker** | | | |
| In 1964 | $30,000 | 5% gross profits | $4,000 |
| In 1965 | ? | ? | ? |
| In 1966 | Deceased | | |
| **Louis A. Becker** | | | |
| In 1964 | $30,000 | 5% gross profits | $4,000 |
| In 1965 | same | same | ? |
| In 1966 | same | same | ? |
| **Joseph A. Becker** | | | |
| In 1964 | $30,000 | 5% gross profits | $4,000 |
| In 1965 | same | same | ? |
| In 1966 | same | same | ? |
| **Carl R. Becker** (Appellant) | | | |
| In 1964 | $ 3,300 | $2,000 | $4,000 |
| In 1965    at least | 3,300 | ? | ? |
| In 1966 | 30,000 | ? | ? |

| Mary Helen Peters (Appellant) | | | |
|---|---|---|---|
| In 1964 | $ 2,520 | $2,000 | $4,000 |
| In 1965 | 2,520 | ? | ? |
| In 1966 | 10,000 | ? | ? |

In 1964 and 1965, salaries, bonuses and dividends were declared by corporate resolution. Only the 1966 salary was entered into by contract on November 10, 1965. Thereafter the corporation sustained a severe operating loss and this included a substantial loss of income to the Roy J. Becker trust. In March of 1970, all of the salaries were renegotiated after a lawsuit was instituted by the corporation against all of its directors and officers.[2] Carl R. Becker took a reduced salary of $22,500 per year, effective date July 1, 1969. Louis' and Joseph's salaries were increased to $36,500 and their bonuses were changed from five percent of the gross profit to 10 percent of the net profit. Generous retirement benefits were also provided. The record indicates no change in Mary Helen Peters' $10,000 salary.

The petition filed by the respondents as beneficiaries of the trust alleged, among other things, that the trustees hold legal title to 50 shares of stock of the corporation, and individually they each own 50 shares, so that together they have voting control of 150 shares of stock. Further, that the trustee, Carl R. Becker, controls the voting of his cotrustee, Mary Helen Peters, so that in fact he controls all 150 shares; and that they have both used their power and control for their own benefit and to the detriment of the trust. The petition also alleges that the salary, bonus, and health and life insurance

---

[2] The complaint was never filed. It was verified on behalf of the corporation by Carl R. Becker and he was named as a defendant individually and as a trustee under the will of Roy J. Becker.

contracts are detrimental to the trust and beneficial to the trustees individually. The amended petition sets forth that appellants are not only trustees but also stockholders, officers and directors of the corporation. Their actions in respect to these positions caused a conflict of interest since their acts were inconsistent with their respective duties; and their actions as trustees were done in bad faith, were willful and intentional—all being to the detriment of the trust.

The appellants' first contention is that the county court does not have subject matter jurisdiction over the claims against them as trustees.

Sec. 253.10, Stats., gives the probate division of the county court subject matter jurisdiction to hear the instant case. Sec. 253.10 (1) and (2) (a), provides in part:

"**Probate jurisdiction.** (1) The jurisdiction of the county court shall extend to the probate of wills . . . and of administration on the estates . . . and to any other cases authorized by law; . . . to all cases of constructions of wills admitted to probate in such court; and to all cases of trusts and trust powers created by will admitted to probate in such court, including administration under ch. 323 of trusts created in accordance with s. 231.49 (1) ; . . .

"(2) (a) The county court shall have concurrent jurisdiction to hear, try and determine all matters and controversies which may arise between any . . . trustee appointed by such court and any other person relating to title to or interest in real and personal property so far as such matter or controversy is incidental to and necessary for the complete administration of the estate, . . . or trust, and regardless of who has possession of the property or in whose name it may be, to the same extent and with like effect as such matters and controversies may be heard, tried and determined in courts of general jurisdiction."

The action here is against the trustees of the Roy J. Becker Trust. It is not a stockholders' derivative

suit, nor an action against the corporation nor against its directors or officers. The action seeks only the trustees' removal and an accounting therein for their bad faith acts in respect to administering the trust.

The trust in question was created by Becker's will and admitted for probate in the county court in 1965. We believe the appellants have misconstrued the action and the nature of relief sought. The fact that the trustees also acted in other capacities and participated in the management of the corporation does not cause the respondents' action to fail nor taint the probate court's jurisdiction. In such management the appellants are still trustees and accountable as such. *Estate of Teasdale* (1952), 261 Wis. 248, 52 N. W. 2d 366. A trustee in operating a business is still also acting as a trustee. *Estate of Teasdale, supra,* at page 263, citing *Estate of Peabody* (1935), 218 Wis. 541, 546, 260 N. W. 444.

Sec. 253.10, Stats., gives the county court jurisdiction to hear, try and determine this controversy.

The appellants have moved to quash the petition upon the grounds the facts stated are insufficient to constitute a cause of action and a defect of parties in that the corporation was not named.

The appellants' motion to quash is equivalent to a demurrer. *Estate of McKillip* (1971), 53 Wis. 2d 202, 191 N. W. 2d 856, citing *In re Estate of Holden* (1875), 37 Wis. 98. When a motion to quash a petition has been made, as here, the petition and documents attached thereto must state facts sufficient enough to entitle the petitioner to the relief sought. And, as a corollary rule, the facts stated in the petition are assumed to be true and are entitled to a liberal construction. *Estate of McKillip, supra.*

Here the petition seeks their removal and an accounting because of their bad faith actions in their simultaneous positions and duties as trustees, shareholders,

directors and officers of the corporation. If these and other allegations contained in the petition can be proven, respondents will be entitled to have the appellants removed and to account therein. *Estate of Martin* (1968), 39 Wis. 2d 437, 159 N. W. 2d 660, and (1963), 21 Wis. 2d 334, 124 N. W. 2d 297. As Scott in his treatise on *Trusts* (3d ed.), p. 1592, sec. 193, states:

". . . Where shares of stock are held in trust, the trustee having legal title to the shares can exercise the powers of a shareholder. He is under a duty to the beneficiaries, however, to exercise these powers for the benefit of the trust. . . ."

And Scott further states in sec. 193.2 at page 1601:

"The trustee will be held accountable by the court if in the exercise of his power of control over the corporation he acts for his own interest rather than for the interest of the beneficiaries. Thus he will be held accountable where he abuses his power of control by procuring his election as an officer of the corporation and the payment to him of a salary or other compensation . . . , a trustee who holds shares of stock in trust and holds other shares individually may be guilty of a breach of trust in forwarding his own interest rather than those of the beneficiaries. . . ."

Based on the record in the instant case, and assuming the facts alleged are true, and giving it a liberal construction, the petition does state facts sufficient enough to entitle the petitioners to the relief sought.

Appellants also complain in their motion to quash that the corporation is a necessary party to this action. The corporation is not a necessary party nor a real party in interest. The action is brought by the beneficiaries of the trust estate against the appellants only as trustees for breach of their fiduciary duties. The trustees by their own choosing accepted directorships and official positions in the corporation. If these positions caused conflicting fiduciary duties of loyalty they were of appellants' own making. The fact that their actions caused

these duties to overlap, intermix and solidify does not change the present cause of action nor require the corporation to be joined. The action is still against the trustees of the testamentary trust for removal and accounting to the trust because of their actions as trustees and not as corporate director or officers.

The appellants also appeal from that portion of the order denying their plea in bar to the amended petition. They argue that since they were also executors of the Becker estate, and since they filed an accounting of that estate which was duly allowed and approved by the county court, and because they were then discharged as executors—the doctrine of res judicata bars the petitioners' right to maintain these proceedings for removal and an accounting.

Again, respondents are not seeking the appellants' removal and an accounting therein as executors, but rather as trustees of the trust. A trustee's status and position is completely different from that of an executor under the eyes of the law. The petition here seeks relief against the trustees and not the executors nor the corporation. The law is clear that a trustee is required to account for his doings as a trustee of the trust. *Will of Gabel* (1954), 267 Wis. 208, 64 N. W. 2d 853. The status and duties of an executor vis-a-vis a trustee are totally distinct and different from each other. The plea in bar was properly overruled.[3]

The major issue is whether the trial court erred in denying appellants' motion for summary judgment.

Sec. 270.635, Stats., providing for summary judgment, does not confer a right to summary judgment but rather confers on the trial court a discretionary power to grant it or deny it. *Zimmer v. Daun* (1968), 40 Wis. 2d 627, 162 N. W. 2d 626. Since it is within the

---

[3] We recognize that an order denying the plea in bar is probably not appealable. *See:* sec. 274.33, Stats. However, we have considered the matter and our opinion is the rule of this case.

court's discretion, an order denying the motion will not be reversed until it appears that the trial court abused its legal discretion or has not exercised it. *Hardscrabble Ski Area v. First Nat. Bank* (1969), 42 Wis. 2d 334, 166 N. W. 2d 191. A motion for summary judgment should be denied when either a substantial issue of fact to be tried exists, or if the inferences to be drawn from the credible evidence are doubtful and uncertain, and ". . . Likewise, when there is credible evidence which under any reasonable view will either support or admit of an inference in support or in denial of a claim of either party, it is for the jury to draw the proper inference and not for the court to determine which of two or more permissible inferences should prevail. . . ." *Voysey v. Labisky* (1960), 10 Wis. 2d 274, 277, 278, 103 N. W. 2d 9, and *Elder v. Sage* (1950), 257 Wis. 214, 42 N. W. 2d 919. If the trial court had a doubt as to whether all of the material facts are presented or some are in dispute, or believes different reasonable inferences may be drawn, or that the affidavits are not sufficient, either quantitatively or qualitatively, to raise a legal question— then the trial court should not consider the legal question. *Murphy v. Miller Brewing Co.* (1971), 50 Wis. 2d 323, 184 N. W. 2d 141.

In this case the respondents seek the appellants' removal as trustees and an accounting therein for damages sustained to the trust because of appellants' said actions. The basis of this action rests on the rule that a trustee still has a strict duty of loyalty to the trust even though the will or trust instrument gives the trustee broad powers of discretion. These powers must still be exercised according to the law and consistent with the duties and obligations as a trustee of the trust. *Estate of Gehl* (1958), 5 Wis. 2d 91, 92 N. W. 2d 372, and *Will of Gabel, supra.* In *Dick & Reuteman Co. v. Doherty Realty Co.* (1962), 16 Wis. 2d 342, 349, 114 N. W. 2d

475, this court has quoted *Magruder v. Drury* [4] as follows:

" 'It is a well-settled rule that a trustee can make no profit out of his trust. The rule in such cases springs from his duty to protect the interests of the estate, and not to permit his personal interest to in anywise conflict with his duty in that respect. The intention is to provide against any possible selfish interest exercising an influence which can interfere with the faithful discharge of the duty which is owing in a fiduciary capacity.' "

In the instant case the trial court stated:

". . . The court in ruling insofar as summary judgment is concerned, on the basis of *Cadden v. Milwaukee County* (1969), 44 Wis. 2d 341, . . . To this court the basic and sole issue that is going to determine everything is the question of fact going to the law which imposes an absolute loyalty upon the trustee or any fiduciary to his trust . . . most of the arguments today are going to the question of the interval, good or bad, of the corporation, and that is secondary and can be used only in evidence of the status and attitude of the trustees . . . With the amended answer before the court, admitted as if it were a demurrer, there is something to adjudicate before this court and truly a serious issue. We are at a point where we haven't real facts decided by cross-examination. . . ."

It is evident that the trial court, in exercising its discretion, was of the opinion there were factual disputes to be resolved concerning the trustees' loyalty. Such disputed facts do exist. The appellants' affidavit states that the allegation of their control over the actions of the stockholders and directors is untrue, but the record shows that Carl R. Becker (trustee-appellant) sent a letter to Attorney Knoeller on October 22, 1965, in which he made an admission as to his control over the actions of the stockholders and directors, and his desire to

[4] (1914), 235 U. S. 106, 119, 35 Sup. Ct. 77, 59 L. Ed. 151.

advance his own personal interests. The letter states in part:

"Dear Mr. Knoeller:

". . . Because this meeting was so called, I decided for the protection of my interests to 'call' both stockholders and directors meeting for the pre-arranged date. . . .

". . .

"The agreement to employ me as general manager runs to the end of 1971 or a period of five years with compensation at the basic salary of $30,000.00 payable weekly. It contains no provision for bonus on sales. After 1971 it provides employment on consultative basis for five years at $10,000.00 per year payable weekly.

"I told Louis and Joe at the meeting, and I repeat here, that I will not back down on my insistence upon this contract for my employment.

"In the past the decisions of Louis and Joe with Roy on all phases of the business, notably their salaries and bonuses, was in their joint control and Mary Helen and I had no alternative but to yield thereto; and we did so. Louis and Joe may not concur in the wisdom or necessity of the company employing me, but the majority now in control believe it to be not only desirable but necessary. Louis and Joe must yield to this decision just as Mary Helen and I did to theirs in the past."

Then on May 28, 1969, Carl R. Becker sent a letter to Joseph A. Becker stating that from 1965 through 1968 an audit of the funeral home's records show that there has been a very substantial loss of income to the Roy J. Becker Trust.

From the affidavits and pleadings in support of and in opposition to the motion, it appears that there are substantial issues of fact to be tried. There are questions as to whether an actual conflict of interest existed, that is, the trustees' personal interests vis-a-vis the trust's interests; and whether they acted in bad faith, plus whether they breached their fiduciary duty of loyalty. We do not believe the trial court abused its discretion in

denying the motion. It cannot be said under the facts of this case that only a question of law exists or that as a matter of right summary judgment should have been granted to the appellants.

*By the Court.*—Orders affirmed.