MULVANEY, Respondent, v. TRI STATE TRUCK & AUTO BODY, INC., Appellant.

*No. 140 (1974). Submitted under sec. (Rule) 251.54 October 30, 1975.—Decided November 25, 1975.*
(Also reported in 235 N. W. 2d 460.)

For the appellant the cause was submitted on the briefs of *Lawrence A. Trebon* and *Stepke, Weiss & Trebon,* all of Milwaukee.

For the respondent the cause was submitted on the brief of *David E. Leichtfuss, Clifford B. Buelow,* and *Davis, Kuelthau, Vergeront, Stover & Leichtfuss, S. C.,* all of Milwaukee.

HANLEY, J. The following issues are presented on appeal:

1. Does sec. 342.15 (1), Stats., provide a warranty of title which may not be excluded or modified by the parties to a vehicle transfer?

2. May waiver and estoppel be applied to bar the application of such warranty?

3. Was a proper amount of damages awarded?

*Warranty of title.*

As contended by appellant summary judgment is a drastic remedy, *Commercial Discount Corp. v. Milwaukee*

*Western Bank* (1974), 61 Wis. 2d 671, 214 N. W. 2d 33, which, if granted, deprives the parties of a trial. *Village of Fontana-on-Geneva Lake v. Hoag* (1973), 57 Wis. 2d 209, 203 N. W. 2d 680. The procedure, including requisite affidavits, is provided by sec. 270.635, Stats., and is a discretionary power of the trial court. *Estate of Becker* (1972), 56 Wis. 2d 356, 202 N. W. 2d 681. Reference must be made to the pleadings to determine whether issues of fact or of permissible inference from facts are presented, although the moving party may present evidence which, if uncontroverted by the opponent, would qualify for summary judgment. *Younger v. Rosenow Paper & Supply Co.* (1971), 51 Wis. 2d 619, 188 N. W. 2d 507.

A concise statement of when summary judgment is appropriate appeared in *Edlebeck v. Barnes* (1974), 63 Wis. 2d 240, 243, 216 N. W. 2d 551:

"However, in those cases where the material facts are not in dispute, no competing inferences can arise, and the law that resolves that issue is clear and overrides any other issues either factual or legal which may appear, then summary judgment should be granted."

The trial court's decision made reference to the title being warranted, and that Mulvaney accepted it as such on the "face of the certificate of title." When the certificate of title was transferred, the following provision on it was signed:

"For value received I (We) hereby sell, transfer and assign the vehicle and warrant title to said vehicle described on this certificate to: . . ."

This declaration on the title was created by sec. 342.15 (1), Stats.:

"If an owner transfers his interest in a vehicle, other than by the creation of a security interest, he shall at the time of the delivery of the vehicle, execute an assignment and warranty of title to the transferee in the space provided therefor on the certificate . . . ."

Failure to execute this assignment and warranty of title may justify a forfeit of not more than $200. Sec. 342.15 (5).

Prior Wisconsin law made no reference to a warrant of title on the certificate. *See, e.g.,* sec. 342.18, Stats. 1963. The enactment by Laws of 1965, ch. 485, sec. 9, was taken substantially verbatim from sec. 14 (a) of the Uniform Motor Vehicle Certificate of Title and Anti-Theft Act. *Knutson v. Mueller* (1975), 68 Wis. 2d 199, 207, 228 N. W. 2d 342. This Uniform Act was preceded by similar sections of the Uniform Motor Vehicle Code (later known as the Uniform Vehicle Code) of the National Committee on Uniform Traffic Laws and Ordinances. 11 U. L. A. Crim. Law and Proc. 423 (1974).

To totally ignore the reference in our statute to warranty of title would do violence to the maxim of statutory construction that a law should be so construed that no word or clause shall be rendered surplusage. *Cook v. Industrial Comm.* (1966), 31 Wis. 2d 232, 239, 240, 142 N. W. 2d 827. It is clearly designed with the intent of protecting purchasers of automobiles from fraudulent sales.

The appellant asserts that certain language in sub. (3) of sec. 342.15, Stats., reaffirms that the parties may contract at will and not be bound by the warranty:

"Except as provided in s. 342.16 *and as between the parties,* a transfer by an owner is not effective until the provisions of this section have been complied with. . . ." (Emphasis added.)

A following sentence provided that compliance with the statutory transfer provisions will be determinative of ownership for liability from vehicle operations. In *Knutson v. Mueller, supra,* at 207, this court recognized this distinctive criteria and acknowledged that the Uniform Commercial Code applies between the parties as to their respective rights. This exception clause, however, refers

only to the time of transfer. The appellant interprets the flexibility as to when the transfer will occur, *see* sec. 402.401, to preclude reliance on the warranty that comes with the assignment. Admittedly, a transfer of interest can precede the transmittal of the certificate with its warranty. In that interim, the Uniform Commercial Code and its warranties would apply. *White v. Mid-City Motor Co., Inc.* (1955), 39 Tenn. App. 429, 284 S. W. 2d 689. The respondent here questionably conceded that sec. 342.15 (1) does not prevent the parties from reaching their own written agreement as to warranty of title. However, the respondent contends that this does not mean that a warranty does not exist if they fail to agree on such a written agreement.

Appellant argues that this warranty is enforceable only by the department of transportation, or to anyone who might have cause to inspect the certificate of title subsequent to the transfer but prior to delivery to the motor vehicle division for a new certificate. It is difficult to understand why the warranty runs to everyone but the purchasing party in whose presence the signature of affirmation would presumably occur and who is listed as the beneficiary of the warranty on the certificate. The needs of the state, to identify vehicle ownership in case of theft or accident, would be satisfied without resort to the use of a "warranty." The appellant also has noted how the provisions of ch. 342, Stats., prevent fraud without the necessity of the warranty language being interpreted as a mandatory warranty of title. This alleged satisfaction of purpose does not preclude other purposes intended by the warranty provision. The Uniform Motor Vehicle Certificate of Title and Anti-Theft Act had a stated goal, among others:

"To curtail losses of buyers, both consumers and dealers, from purchases of stolen vehicles and vehicles subject to defects in title and undisclosed liens." National

Conference of Commissioners on Uniform State Laws (1955), p. 170.

The conclusion is that a full warranty of good title was intended. *See: Seymour v. Sales Co.* (1962), 257 N. C. 603, 127 S. E. 2d 265, 269; *Maxwell Co. v. Southern Oregon Gas Corp.* (1937), 158 Ore. 168, 178, 74 Pac. 2d 594.

May this warranty in any way be modified or waived? Appellant views sec. 342.15 (1), Stats., as "unconstitutional" if agreement to the contrary cannot be made by the parties. No citation of authority is produced for this assertion. Although the principle of freedom of contract is established in American law, legislators quite properly have seen fit to limit this right when the public interest so requires. *See:* Bunn, *Freedom of Contract Under the Uniform Commercial Code,* 2 Boston Coll. Ind. & Com. L. Rev. (1960), 59, 63–67. Tri State further notes the hardship imposed on a seller if sec. 342.15 controls in vehicle transfers rather than sec. 402.312, whose warranty of title may be modified or excluded. The modification section of that Uniform Commercial Code provision states that it applies only to the code warranty while the certificate warranty makes no mention of an ability to be excluded or modified. The fact that hardship is imposed on this particular seller is no basis for holding that a more flexible provision of general commercial law applies in place of the provision that was enacted by the legislature to apply to this specific transaction. The right to disclaim was not also provided.

Sec. 342.15 (1), Stats., apparently provides that a vehicle buyer is guaranteed that the transferor is the owner of the vehicle. A discovery that the vehicle is stolen gives the purchaser a remedy for any resulting actual loss. Purchasers along the chain of title have their consecutive right of remedy, including the buyer from the source of the theft, who may or may not have an economically responsible defendant.

The warranty provision, coupled with the scheme for security interest perfection by notation on the certificate, further provides a guarantee that the vehicle is not subject to any security interests not listed on the document. The distinctive certificate that warns of possible undisclosed security interests, which is normally issued for vehicles with titles from other states, does not negate the warranty. It merely offers a warning that a security interest may exist, irrespective of the beliefs of the seller. The buyer can then make a choice on the proposed purchase, knowing that future difficulties may arise which may not be entirely satisfied by his right to the warranty remedy for his actual losses. As for other liens, the absence of specific concern for them by the Uniform Acts and the absence of reference in ch. 342, Stats., indicates that they are subject to the implicit warranty of the Uniform Commercial Code, 402.312 (1) (b), which allows an exception to warrant coverage if the buyer is informed of their encumbrance. Sec. 402.312 (2).

The award of summary judgment to the respondent is consistent with this application of the statutorily demanded warranty accompanying a vehicle transfer. There is thus no need to vacate that judgment and return the action for determination of the result under sec. 402.312, Stats., where the parties controvert the factual existence of a disclaimer of the code warranty.

*Waiver and estoppel.*

The appellant also urges a return for a trial on the merits because of a claimed waiver and estoppel to assert the warranty on the certificate. This claim is based on the respondent's statements, when the questionable condition of the title was disclosed prior to purchase, that he would have the bank (from which he was seeking a loan) run a check on the title. He asserted it had a way "to check such things."

"Waiver" is an intentional and voluntary relinquishment of a known right, and in order to establish a waiver the proponent must show that the person against whom the waiver is asserted had at the time knowledge, actual or constructive, of the existence of his rights or facts upon which they depended. *Hanz Trucking, Inc. v. Harris Brothers Co.* (1965), 29 Wis. 2d 254, 264, 265, 138 N. W. 2d 238. Ignorance of a material fact or consent given under a mistake of fact negatives waiver. Intent to waive is an essential element. *Knapke v. Grain Dealers Mut. Ins. Co.* (1972), 54 Wis. 2d 525, 532, 196 N. W. 2d 737. Only a clear and specific renunciation of the statutory right by the buyer, demonstrating an intentional waiver, would be sufficient. That is not alleged here.

Estoppel cannot arise in absence of proof that the party claiming benefit thereof has relied to his detriment on conduct claimed to give rise to estoppel. *Buza v. Wojtalewicz* (1970), 48 Wis. 2d 557, 567, 180 N. W. 2d 556, *Ryder v. State Farm Mut. Automobile Ins. Co.* (1971), 51 Wis. 2d 318, 325, 187 N. W. 2d 176.

Here the situation proposed in the affidavits establishes no basis for the application of estoppel. There is no assertion of any reliance by the appellant on the ability of the respondent to check the title. To the contrary, the affidavits indicate nothing more than that the appellant desired to sell the vehicle regardless of the respondent's own sources for assuring himself that the title was clear.

Appellant cites cases in support of the proposition that a person may waive or be estopped from relying upon a statutory right. These decisions, *Will of Bowman* (1957), 2 Wis. 2d 404, 86 N. W. 2d 442, and *Booth Fisheries Co. v. Industrial Comm.* (1924), 185 Wis. 127, 200 N. W. 775, actually are examples of estoppel by election where the claimant was barred from challenging a statute or will after accepting its benefits. That is not the situation in the case at bar.

*Damages.*

Appellant argues that it is entitled to a trial because there are factual questions regarding the measure of damages. In cases of a breach of warranty, the established measure of damages is the difference between the actual value of the property and the value if as warranted. *Aultman & Taylor Co. v. Hetherington* (1877), 42 Wis. 622, 623. It is agreed that there is now no actual worth for the stolen vehicle removed from Mulvaney. There is no dispute that the vehicle was worth $8,000. In fact, appellant alleged in its answer that the car was worth $8,500.

Appellant assumed that the contract price was the proper element to be used in setting damages and further assumed that there was a question of fact as to whether the contract price was $8,000 inclusive of the XKE (presumptively valued at $2,000) or was $6,000 plus the XKE. This theory of damage was in error. The contract price is relevant evidence, although not conclusive. Authority relied on by the appellant actually involves the limit of setoff allowed for breach of warranty in defense of a claim for the contract price. *Dunck Tank Works, Inc. v. Sutherland* (1940), 236 Wis. 83, 86, 294 N. W. 510.

The judgment of $8,000 would be incorrect if it is based on the contract price. Respondent's affidavit, however, contained the allegation that the $8,000 price was believed by him to be the fair market value. Since Tri State attempted to establish that the market value was higher by imprecise assertions, and since the respondent has not disputed the award, no reason exists for returning this action for a factual hearing as to the possibly higher market value.

*By the Court.*—Judgment affirmed.