HERITAGE BANK OF MILWAUKEE, Appellant, v. PACKER-LAND PACKING COMPANY, INC., Respondent.

*No. 75–467. Argued January 4, 1978.—Decided February 7, 1978.*
(Also reported in 262 N.W.2d 109.)

For the appellant there was a brief by *Arthur M. Moglowsky* and *Bass, Goldstein, Moglowsky & Stein, S. C.* of Milwaukee and oral argument by *Arthur M. Moglowsky*.

For the respondent there was a brief by *Bernard Berk* and *Berk, Pressentin & Hoida* of Green Bay, and oral argument by *Bernard Berk*.

CONNOR T. HANSEN, J.   During 1968, Packerland entered into a five-year lease agreement with Bloedow

Truck Leasing Corporation for twenty truck tractors and trailers. The tractors were to be maintained and serviced by Bloedow. The purchase of the equipment was to be financed by the Peoples Bank of Green Bay. Peoples Bank financed the purchase of the first two units and the Security State Bank of Madison, which was an affiliate of Peoples Bank of Green Bay, financed the purchase of the remaining eighteen units.

It is undisputed that the transactions between Packerland, Bloedow, Peoples Bank and subsequently Security Bank, were handled in such a manner that Peoples Bank and its successor, Security, held a valid security interest in the twenty units supported by an assignment of the lease between Packerland and Bloedow.

At the insistence of Packerland, the lease and a related consent agreement, both executed by Packerland, Bloedow and Peoples Bank on September 12, 1968, provided for one year's uninterrupted use of the vehicles by Packerland under certain circumstances. Pertinent to the appeal, the lease provided:

"In the event that Lessor is adjudicated bankrupt or files a voluntary petition for bankruptcy, or if Peoples Bank of Green Bay terminates the loan or calls in their loan, Lessor agrees that the lease be automatically assigned for the benefit of the Peoples Bank of Green Bay, subject to the terms of the Consent Agreement attached hereto and a part hereof, the same as if it had been incorporated herein."

The consent agreement provided, in part:

". . . [T]he bank promises and agrees that in the event lessor is adjudicated bankrupt or files a voluntary petition for bankruptcy and the bank's investment is in peril, bank will give one year notice by registered mail to lessee at its offices at the City of Green Bay, Wisconsin. In that event, lessee shall have the uninterrupted right to operate said equipment for a period of one year from such notice.

"It being a condition of such right to operate said equipment that Lessee shall pay to Bank the regular and agreed rental rate as set forth in such lease, less the reasonable and necessary costs and expenses incurred by Lessee to operate such equipment, which costs and expenses would otherwise be the obligation of Lessor."

When Security Bank became involved in the financing of the units, a new consent agreement was executed by Packerland, Bloedow and Security Bank, which contained the same provision.

In accordance with the terms of the lease, Bloedow maintained and repaired the tractors until November, 1969, at which time Bloedow sold out to Southern Leasing Service, Inc. Southern purchased the assets of Bloedow, including the twenty tractors, and assumed Bloedow's obligation to Security Bank. Southern executed a chattel security agreement granting the bank a security interest in the tractors and other assets, and further executed an assignment of the lease, granting Security Bank a security interest in the lease and the lease rentals.

On December 14, 1971, Southern secured a loan from Heritage Bank to refinance the debt to Security Bank and to provide additional working capital. The proceeds of the loan were $250,000. Southern executed a chattel security agreement granting Heritage a security interest in the twenty tractors.

Before making the loan, Heritage had examined a copy of the lease with Packerland and the consent agreement. The details of the arrangement, including the one-year grace period, had been disclosed to Heritage's loan committee.

The refinancing was arranged between Southern and Heritage, and the necessary documents were executed by them alone. Security Bank did not assign the lease or its security interest to Heritage. Heritage issued a cashier's check payable to Security Bank and to

Southern; the check paid the Security Bank loan in full; and Security Bank released its interest in the collateral.

In December, 1971, Packerland advised Heritage that in the event that Southern defaulted on the loan, Packerland would assert a right to continued possession of the vehicles under the lease and consent agreement.

On February 3, 1972, Southern assigned the rentals under the lease to Heritage Bank.

By letter dated April 20, 1972, Heritage advised Packerland that Southern had defaulted on the loan; that Heritage had a first security interest in the tractors; and that Heritage was entitled to immediate possession of the tractors.

Packerland replied, asserting a right, under the lease, to retain possession of the vehicles for a period of one year from such time as Heritage foreclosed Southern's interest in the vehicles.

Heritage accelerated its loan on May 17, 1972, and commenced a foreclosure action against Southern on June 6, 1972.

On June 8, 1972, Heritage directed a letter to Packerland advising Packerland that the foreclosure action had been commenced, and stating:

"The Heritage Bank deems its investment to be in peril. Therefore, please take notice that the Heritage Bank intends to take actual possession of said tractors one (1) year from the date you receive this notice.

". . . .

"Take further notice that as a condition of the right of Packerland to operate said leased tractors for the period of one year from receipt of this notice, Packerland must pay to the Heritage Bank the regular and agreed rental rate as set forth in said Lease."

At subsequent meetings between Packerland and Heritage Bank, the administration of the lease and service arrangements thereunder were discussed. Packerland informed Heritage that the rentals were insufficient

to cover the costs of service and maintenance, and that the bank was therefore unlikely to receive rentals.

On July 28, 1972, Packerland refused the bank's demand for payment of $18,157.86 in rentals.

On August 8, 1972, the bank demanded the immediate return of the tractors, and Packerland refused. This action was commenced August 24, 1972.

On September 5, 1972, Southern filed a voluntary petition in bankruptcy.

An employee of Packerland telephoned an authorized representative of Heritage Bank on September 11, 1972, to discuss operation of the lease following the filing of Southern's petition in bankruptcy. The bank's representative allegedly stated that Packerland should continue the procedures which had been in effect. According to Packerland's employee Packerland requested written confirmation of this arrangement and was subsequently informed that, on advice of Heritage's counsel, there would be no written arrangement, and that Packerland should do whatever it considered appropriate.

The bank obtained possession of one of the twenty tractors in May or June of 1972. The remaining tractors were delivered to the bank on July 12, 1973.

Packerland did not make any rental payments to Heritage Bank during the period from June 9, 1972, to July 12, 1973, in accordance with Packerland's interpretation of the lease.

The outstanding balance on the loan, excluding interest, is $135,153.06.

On these facts, and the other evidence presented, the trial court determined that Packerland had been entitled to retain possession of the vehicles for one year and therefore granted an interlocutory judgment dismissing the replevin action commenced by Heritage.

Heritage Bank advances a number of arguments as to why Packerland was not entitled, under the leasing and

financial arrangement, to possession of the vehicles for one year before repossession by Heritage. Whether or not Packerland was lawfully entitled to the possession of the tractor-trailer units for the one-year period, of course, goes to the question of damages, which we understand is to be resolved in the principal action still pending.

We have considered all the arguments propounded by Heritage and although they are interesting, we find them neither persuasive nor dispositive of the case. The trial court found that Heritage had waived any right to the possession of the vehicles during the one-year period. From our examination of the record, we are of the opinion that this determination by the trial court is amply supported by the evidence presented. Therefore, since we agree with the determination of the trial court that Heritage waived any right to the possession of the vehicles during the one-year period, it is unnecessary to consider the other issues raised by Heritage.

By letter dated April 21, 1972, Packerland had advised Heritage that it would assert a right under the lease to one year's use of the vehicles, commencing on the date that Southern's interest in the vehicles was foreclosed.

Heritage commenced an action to foreclose Southern's interest,[1] and advised Packerland by letter dated June 8, 1972, that:

"The Heritage Bank deems its investment to be in peril Therefore, please take notice that the Heritage Bank intends to take actual possession of said tractors one (1) year from the date you receive this notice.

". . . From the date of this notice, all rental payments must be made directly to the Heritage Bank of Milwaukee, . . .

---

[1] The foreclosure action was commenced on June 6, 1972, and judgment of foreclosure was entered in August of 1972.

"Take further notice that as a condition of the right of Packerland to operate said leased tractors for the period of one year from receipt of this notice, Packerland must pay to the Heritage Bank the regular and agreed rental rate as set forth in said Lease."

This letter is an unmistakable invocation of the grace period provision of the consent agreement. The letter follows and even embodies the terminology of the agreement. Thus the bank stated that it ". . . deem[ed] its investment to be in peril." The letter demanded return of the vehicles one year from the date of receipt and recognized ". . . the right of Packerland to operate said leased tractors for the period of one year. . . ," subject to the duty to pay rentals to the bank as provided in the lease.

The letter positively states that Heritage intends to take actual possession of the vehicles one year from the date Packerland received the notice. The trial court found that Heritage continued to treat the grace period provision as in effect until August, 1972, when operating deficits under the lease became apparent. Heritage then demanded immediate possession of the tractors. The trial court correctly concluded that by its letter of June 8, 1972, and by its subsequent conduct, Heritage had waived any such right to immediate possession.

Heritage argues that the trial court should not have admitted the letter of June 8, 1972, into evidence because the letter was an offer to compromise, and should have been excluded under sec. (Rule) 904.08, Stats.[2] This

---

[2] Sec. 904.08, Stats., provides, in part:

"*904.08 Compromise and offers to compromise.* Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of

argument is without merit. It is true that Heritage had demanded immediate possession of the tractors on April 20, 1972, and that Packerland had asserted a claim to the one-year grace period. However, this does not mean that the letter of June 8th represented a compromise offer. The letter was prepared by Heritage without prior negotiation, compromise or agreement with Packerland. The letter was not tentative or conditional; it was framed as an unqualified notice that Heritage demanded possession in one year and further demanded rental payments pursuant to the lease during the one-year period. It is our opinion that this letter cannot be considered an offer to compromise, and was properly admitted into evidence and considered by the trial court.

Even if the letter were to be construed as a compromise, one would be compelled to conclude that the "offer" was "accepted" by Packerland because the bank and Packerland operated under the terms of the letter for several months prior to the time Southern filed bankruptcy. Heritage cannot now disavow the arrangement which it initiated.

Heritage further argues that there was no waiver because any renunciation of a right to immediate possession was unintentional, unknowing or ambiguous. This court has held that waiver requires an intentional and voluntary relinquishment of a known right, and requires that the party against whom the waiver is asserted have actual or constructive knowledge of the facts on which the right depends. *Mulvaney v. Tri State Truck & Auto Body, Inc.*, 70 Wis.2d 760, 768, 235 N.W.2d 460 (1975). These requirements are satisfied here.

conduct or statements made in compromise negotiations is likewise not admissible. . . ."

The letter of June 8, 1972, was not prepared inadvertently or without knowledge of Heritage's legal position. Heritage had been fully aware of the grace period provision even before it made the loan to Southern. Packerland had brought the provision to the attention of Heritage. Heritage's lawyer had been actively involved in the bank's handling of the lease arrangements. He had written to Packerland on behalf of Heritage on April 20, 1972, asserting a right to possession of the tractors. He wrote the letter of June 8, 1972. There were no material facts unknown to Heritage. It cannot be said, therefore, that the bank acted ignorantly or unintentionally. The purpose and significance of the letter are unmistakable. By the letter, Heritage effectively waived any right to possession of the vehicles during the one-year period. The judgment is affirmed.

*By the Court.*—Judgment affirmed.

CALLOW, J., took no part.