Estate of Hoops: Kluge, Trustee, Appellant, vs.
Tesch, Cotrustee, Respondent.

*February 6—March 6, 1956.*

For the appellant there was a brief by *Michael Burns,* attorney, and *Vernon J. Lubinski* of counsel, both of Seymour, and oral argument by *Mr. Burns.*

For the respondent there was a brief and oral argument by *Edgar E. Becker* of Appleton.

BROADFOOT, J.   The trial court felt that the language of article IV of the will was ambiguous and he resorted to extrinsic evidence to determine the intention of the testator.

The scrivener who drafted the will testified that he was called to the home of the parties by Mr. Barth and that his instructions for drafting the will were given by the testator in the presence of Mrs. Hoops and Mr. Barth. A portion of his testimony as to the intention of the testator follows:

"*Q.* Was there any consideration at that time that the income from all of the property irrespective of whether it was

Mr. Hoops' property, in his own name or the joint property, or the—that is the actual mortgages that you have mentioned—the income off of that—was that considered to be used for the support of Mrs. Emma Hoops after Mr. Hoops' death? *A*. I can't answer that by a 'Yes' or 'No' answer. I would say this, that the method of drawing the will and the method of handling the property was left entirely to me. It was my understanding but the exact statements that either one of them definitely said, I would have to say that I don't remember. I am rather inclined to think they didn't—they relied entirely on me in drawing up this document.

"*Q*. I see. *A*. It was my understanding that the income—all of the income would be used by Mrs. Emma Hoops and that if that was insufficient and, we expected that due to the fact that she was much healthier and she might need more,—and medical expenses, then the property that came from Mr. H. A. Hoops was to be included—the joint property which was considered all the way through as being hers and we could not put that in trust as being usable, would be used first and then she would only fall back on her own property after—so far as the principal is concerned—after all of his property had been exhausted.

"*Q*. It was, however, contemplated that the income of her property that she had at that time—disclosed or undisclosed—was to be used for her support with the income from Mr. Hoops' property? *A*. Well, that was my idea of it.".

Many other facts and circumstances, including the amount of Mrs. Hoops' separate property, both that retained by her and that given by her to her daughters, were testified to. From the record the court found that it was the intention of the testator that his widow be supported from the income of the trust estate, together with the income from her individual property; that the income from all of the property available to Mrs. Hoops at the death of the testator, including the income from her then separate estate, was sufficient for her support without invading the principal of the trust estate. The order was based upon those findings.

Each side refers us to cases decided by this court in the past which they claim to be controlling. In the cases cited the size of the estates involved and the other facts and circumstances were so different that the decisions therein are of no aid in determining the issues here. The language of the will is clear. The income and so much of the principal as the trustees in their discretion deem necessary shall be used for the support of Mrs. Hoops. Their discretion is to be exercised by considering the amount of the estate left by the testator and the needs of Mrs. Hoops in view of her separate income.

From the entire record we have a pleasant example of a happy and successful second marriage. Both of the parties to the marriage were over fifty years of age and Mrs. Hoops is now approximately eighty-seven years of age. The trouble that has arisen here results from the selection of the trustees. The trial court found that the trustees were honest and honorable men, and with that we agree. It further found that any action by the trustees in violation of their duties as such was the result of lack of instructions. We also agree with that. The trustees are laymen apparently with little or no knowledge of the serious responsibilities and duties of a trustee. Both are subject to the influence of the consequences of their acts as trustees upon the personal fortunes of their wives. When they first met, and in the exercise of their discretion, they determined that the sum of $56 per month was required from the estate for the ordinary and necessary living expenses of Mrs. Hoops. The income from the estate was insufficient to pay this amount. The amount itself is insufficient to pay for all of the expenses of Mrs. Hoops and will require her to make payments from her own separate property. She lives alone in the home formerly occupied by herself and Mr. Hoops. At her age it is inconceivable that she could maintain this household with the funds agreed to

be paid her from the estate. There is nothing in the record to indicate any change in her circumstances that would require a larger or smaller amount to be paid from the trust funds. Having exercised their discretion under the powers vested in them by the will they should continue those payments until there is a change in her circumstances that may increase or decrease her needs. Where there are two trustees, one of them cannot modify or change the determination of the trustees acting jointly. No change can be made until each trustee agrees thereto. An arbitrary refusal to co-operate is cause for removal.

If there is a change in Mrs. Hoops' circumstances the trustees should meet that situation fairly and honestly and without regard for the effect that their action may have upon the personal interests of their respective wives. It is probable that in such circumstance they would consult the county judge. If, after proper instructions they are unable, because of their personal interests, to make a fair and honest determination it would be entirely proper for the trial court to suggest that each resign and that a neutral trustee, unaffected by any personal interest, be appointed to carry out the provisions of the trust.

That part of the order of May 26, 1955, contained in paragraph numbered 1 is reversed.

That part of the order of May 26, 1955, contained in paragraph numbered 4 thereof is affirmed. Mrs. Hoops has a life estate in the home. It is her duty to pay the taxes and insurance premiums thereon. It is the duty of the trustees to see that these items are paid. The simplest way of handling the matter is for the trustees to pay those items and to deduct the same from the amounts authorized to be paid to Mrs. Hoops.

That part of said order contained in paragraph numbered 5 thereof is affirmed. What started as a proceeding requesting instructions for the trustees degenerated into a family

and personal quarrel. Although there are authorities that hold that the expenses of trustees in successfully defending an application for their removal may be paid out of a trust estate, the allowance of necessary disbursements and reasonable attorney's fees is within the discretion of the trial court. *Nelson v. Madison Lutheran Hospital & Sanatorium,* 243 Wis. 97, 9 N. W. (2d) 599; *Will of Rice,* 150 Wis. 401, 488, 136 N. W. 956, 137 N. W. 778. Most of the controversy resulted in no benefit to the estate and we will not disturb the discretion exercised by the trial court thereon.

That part of said order contained in paragraph numbered 3 thereof, from which the Trustee Tesch appealed, is affirmed.

Trustee Kluge was entirely within his rights in challenging the interpretation of the language setting up the trust estate and should be allowed his actual disbursements, which will include a reasonable attorney's fee, upon this appeal to be paid out of the trust estate. The order of September 8, 1955, is, therefore, reversed.

*By the Court.*—The order of September 8, 1955, is reversed. The cause is remanded with instructions to modify the order of May 26, 1955, pursuant to this opinion and, as so modified, that order is affirmed. Neither party shall tax costs in this court against the other, and the trustees are directed to pay the clerk's fees out of the trust estate.