In the MATTER OF THE TRUST under the Will OF
Rene VON SCHLEINITZ for the Benefit of
Frieda von Schleinitz:

TRUST OF Rene VON SCHLEINITZ, f/b/o Frieda von
Schleinitz, by Christine Lindemann (a Trustee),
Petitioner-Appellant-Cross-Respondent,

v.

Geoffrey MACLAY, Jr., Geoffrey Maclay, Sr. and
Edith Maclay, Respondents-Respondents-
Cross-Appellants.

Court of Appeals

*No. 2014AP2123. Submitted on briefs June 23, 2015.
—Decided December 15, 2015.*

2016 WI App 4

(Also reported in 874 N.W.2d 573.)

On behalf of the petitioner-appellant and cross-respondent, the cause was submitted on the briefs of *Sean Lanphier* and *Adam A. Bardosy* of *Mallery & Zimmerman, S.C.* of Milwaukee.

On behalf of the respondents-respondents and cross-appellants, Geoffrey Maclay, Sr. and Edith Maclay, the cause was submitted on the briefs of *John A. Rothstein* of *Quarles & Brady LLP* of Milwaukee.

■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■

On behalf of the respondents-respondents and cross-appellants, Geoffrey Maclay, Jr., the cause was submitted on the briefs of *David P. Lowe* of *Law Offices of David P. Lowe, S.C.*, of Milwaukee.

Before Curley, P.J., Kessler, J., and Daniel L. La-Rocque, Reserve Judge.

¶ 1. KESSLER, J. Christine Lindemann appeals a judgment of the circuit court pertaining to real estate owned by the Trust of Rene von Schleinitz. Linde-mann, one of three trustees, contends that the circuit court erred when it found that a septic system servic-ing a home ("Hillside Cottage") on the Trust property belonged to the homeowners—her parents—rather than to the Trust. She also contends that the circuit court erroneously denied her request for an accounting of Trust expenses and for attorney fees paid for by the Trust.

¶ 2. Edith and Geoffrey Maclay, Lindemann's parents, along with her brother, Geoffrey Maclay Jr. (collectively, "The Maclays"), cross-appeal. The Ma-clays contend that the circuit court erroneously failed to dismiss Lindemann's action because Lindemann lacked the authority to unilaterally litigate issues pertaining to the Trust. They also argue that the circuit court erroneously found that the well and water pump supplying water to Hillside Cottage was an improvement to the Trust property, thereby belonging to the Trust and not the home. Finally, the Maclays contend that the circuit court erroneously failed to grant their request for attorney fees.

¶ 3. We affirm in part and we reverse in part. We affirm the circuit court's finding that the septic system servicing Hillside Cottage belonged to the home, as

opposed to the Trust. We also affirm the circuit court's denial of Lindemann's request for an audit of the Trust, as well as her request for attorney fees. However, we conclude that the circuit court erroneously denied the Maclays' motion to dismiss Lindemann's action, erroneously found that the water system supplying water to Hillside Cottage belonged to the Trust, as opposed to the home, and erroneously denied the Maclays' motion for attorney fees. Accordingly, we reverse the circuit court's findings on these matters and remand to the circuit court for a determination of the Maclays' attorney fees.

## BACKGROUND

¶ 4. This is the second time this Trust, and these individuals, have been before this court. Rene von Schleinitz and his wife Frieda had one daughter, Edith. Edith married Geoffrey Maclay. Edith and Geoffrey had four children, two of whom are material to this litigation: Geoffrey Maclay, Jr. ("Rip") and Christine (Maclay) Lindemann. We take many of our facts from an appeal Lindemann previously filed in relation to this Trust. *See Trust of Rene von Schleinitz v. Edith Maclay*, No. 2008AP677, unpublished slip op. (WI App Feb. 5, 2009) (*von Schleinitz Trust 1*). In deciding that case, we noted the following:

> Rene von Schleinitz died in 1972. His will provided for a trust to hold real property, including "[a]ll real estate situated in the Town of West Bend, Washington County, Wisconsin, known as Sunset Ridge . . . together with improvements thereon, which presently consists of the Main cottage, Tree-top cottage, Hillside cottage, which presently consists of a new structure erected by my daughter, Edith Maclay, [and] North cottage." The will also provides that upon

643

von Schleinitz's death, "Edith Maclay[] may occupy premises known as 'Hillside Cottage,' which presently consists of a new structure . . . for such length of time as she shall so desire."

In 1975, the Milwaukee County Probate Court entered a final judgment [which] . . . placed the West Bend property in the Trust, "[i]nclud[ing] improvements thereon consisting of the Main cottage, Tree-top cottage and the North cottage and sundry buildings appurtenant thereto but *not including improvement known as Hillside cottage owned by Edith Maclay and Geoffrey Maclay.*"

*Id.*, ¶¶ 2–3 (first, second, third, fifth and sixth set of brackets in *von Schleinitz Trust 1*; first and second ellipses in *von Schleinitz Trust 1*; emphasis added). We quoted at length from the probate judgment as to the property placed in the Trust:

The following described real estate located on Cedar Lake, Town of West Bend, Washington County, Wisconsin, and more fully described as follows:

That part of lot number four (4) in Section twenty-nine (29), in Township number eleven (11) North, of Range number nineteen (19) East, described as follows: [legal description of the boundaries of the Cedar Lake parcel, including the property under the Hillside cottage].

Includes improvements thereon consisting of the Main cottage, Tree-Top cottage and the North cottage and sundry buildings appurtenant thereto *but not including improvement known as Hillside cottage owned by Edith Maclay and Geoffrey Maclay.*

*Id.*, ¶ 8 (emphasis added; brackets in *von Schleinitz Trust 1*). Lindemann, a contingent beneficiary, did not

644

appeal the judgment. Some years later, Lindemann became a co-trustee in addition to being a contingent beneficiary.[1]

> In 2004, the Maclays' daughter and successor co-trustee of the Trust, Christine Lindemann, filed a petition to amend the Trust's inventory. In her petition, Lindemann asserted that the 1975 judgment improperly excluded the Hillside cottage from the Trust, contrary to the language of von Schleinitz's will. The court dismissed the petition as untimely.

*Id.*, ¶ 4. Lindemann did not appeal the dismissal.

¶ 5. We summarized the history of litigation involving the Cedar Lake property, which resulted in the first appeal.

> In 2006, the Maclays [sought] . . . a declaratory judgment to determine the *property rights in the land underlying and adjoining the Hillside cottage.* Following a trial, the court declared that the Maclays own the land underlying and adjoining the Hillside cottage.

*Id.*, ¶ 5 (emphasis added). Lindemann, acting as a co-trustee, appealed. In that appeal, the Maclays argued that Lindemann could not bring the litigation as a trustee because her co-trustee (Rip) did not support the litigation. We rejected that argument because the record did not then demonstrate the co-trustee's position. *See id.*, ¶¶ 10–11. We concluded that:

> the entire Cedar Lake property belongs to the Trust, except the *improvement* known as the Hillside cottage. The judgment does not define the term "improvement,"

---

[1] Edith and a bank were originally named as co-trustees. Sometime after Frieda's death, Edith and the bank resigned as co-trustees. Thus, in 1977, at Edith's request, the probate court appointed Edith and Geoffrey's two eldest children, Christine Lindemann and "Rip" Maclay, as co-trustees.

but Black's Law Dictionary defines "improvement" as "[a]n addition to real property, whether permanent or not." Black's Law Dictionary 761 (7th ed. 1999). We discern no reason to deviate from that definition here. Indeed, the language of the judgment is consistent with this definition. The judgment describes boundaries of the "real estate" and then identifies "improvements thereon" consisting of three cottages, "but not including improvement known as Hillside cottage." This is an unambiguous reference to improvements on the real estate.

*von Schleinitz Trust 1*, No. 2008AP677, unpublished slip op., ¶ 8 (footnotes omitted). We also specifically confirmed the Maclays' access to an easement over the Trust real estate to Hillside Cottage based on the circuit court's finding that the Trust stipulated to that easement. *See id.*, ¶ 8 fn.1.

¶ 6. In May 2011, Edith filed a petition with the probate court to remove Lindemann as co-trustee of the von Schleinitz Trust. In October 2011, Edith, Geoffrey, Lindemann and Rip (the other co-trustee) engaged in a mediation, which resulted in a written Stipulation. The parties agreed, among other things, to the appointment of a tie-breaking third trustee— Reserve Circuit Court Judge Michael Sullivan. The Stipulation stated that "all rights and powers vested in the trustee by the Trust (or by law) shall be exercised by majority decision." The Stipulation further provided:

> "No Unilateral Acts. A single trustee *shall not* take unilateral action regarding the Trust or its assets except as provided herein."[2]

---

[2] The exceptions to the majority approval requirement have to do with individual trustee misconduct and are not material to this appeal.

(Underlining in original; italics added.) On October 5, 2011, the probate court entered a Final Order approving and adopting "in its entirety" the terms of the Stipulation, and appointing Reserve Judge Michael Sullivan as the third trustee. Lindemann did not appeal that Final Order.

¶ 7. On February 20, 2013, Lindemann brought the action underlying this appeal, asking the circuit court for a declaratory judgment that certain fixtures and structures on the Trust real estate, except the Hillside Cottage, belong to the Trust. Specifically, the circuit court was to decide whether the septic system servicing the cottage, the well and pump supplying water to the cottage, the garage, the walkways, and the pathways around the cottage, were improvements to Trust property, thus belonging to the Trust. Lindemann also sought a court order requiring an audit of the Trust's accounts and attorney fees, both to be paid for at the expense of the Trust.

¶ 8. The Maclays promptly moved to dismiss Lindemann's action on the grounds that it violated the October 5, 2011 Final Order prohibiting any unilateral litigation involving the Trust. At the hearing on the motion to dismiss, counsel reminded the court about the Stipulation and the Final Order, stating:

> It's perfectly clear this Court adopted and enforced that stipulation. It's now a court order. That was not appealed. It is the law of the case, and it couldn't be more clear on that point.

The circuit court denied the motion, concluding that Wis. Stat. § 701.14(1) (2011–12)[3] grants a trustee the right to bring an action in the circuit court and that

---

[3] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

Lindemann's action could be resolved via declaratory judgment. The matter proceeded to an evidentiary hearing and to trial.

¶ 9. Throughout the litigation, the heart of the Maclays' argument was that Lindemann lacked the authority to unilaterally litigate on behalf of the Trust. Specifically, the Maclays pointed to the "No Unilateral Acts" provision of the Stipulation, which required Lindemann to obtain approval from a majority of the Trustees before commencing litigation. They argued that the circuit court's adoption of the Stipulation constituted a Final Order and, in essence, was the law of the case prohibiting Lindemann from unilaterally litigating issues pertaining to the Trust. After considering all of the evidence, including testimony from several witnesses, the circuit court made several findings at a hearing held on April 24, 2013. As to Lindemann's request for a declaratory judgment determining whether several fixtures belonged to the Trust or to Hillside Cottage, the court relied (as we did in *von Schleinitz Trust 1*) on Black's Law dictionary:

> *Black's Law dictionary defines improvement as a valuable addition made to property,* usually real estate, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes . . . but *may also include any permanent structure or other development such as a street, sidewalks, sewers, utilities, etcetera.*

(Emphasis added.) Using this definition, the court made the following findings:

- The septic system servicing Hillside Cottage was a part of the cottage, i.e. not Trust property, because it was "put in at the time that the house

648

was put in . . . [and is] essential to the require-ments and workings of the house."

- The retaining wall, the walkways, the garage and patios erected near Hillside Cottage are not a part of the home and are Trust property, which will belong to the testamentary trust upon Edith's death; and

- The well and pump supplying water to Hillside Cottage do not belong to the cottage and are Trust property.[4]

¶ 10. As to Lindemann's request for an audit of the Trust funds, the circuit court found that testimony as to the necessity of an audit was conflicting, but ultimately found no evidence to suggest that Geoffrey (as bookkeeper) mishandled any trust funds. The court also determined that an audit would be unnecessarily costly to the Trust and denied Lindemann's request.

¶ 11. The circuit court also denied Lindemann's request for attorney fees, stating that "this action was not . . . ratified by a majority of the trustees," thus, the Trust should "not be responsible for [Lindemann's] decision which was made . . . without the support of the other two trustees."

¶ 12. The circuit court also denied the Maclays' motion for attorney fees, stating that the motion was filed just one day before the April 24 hearing and was thus untimely.

¶ 13. This appeal and cross-appeal follow.

---

[4] The circuit court did not address the issue of the water system at the hearing, but issued a separate order after the hearing. To be concise, we list the circuit court's findings together.

## DISCUSSION

¶ 14. On appeal, Lindemann raises three arguments: (1) the circuit court erred in finding that the septic system servicing Hillside Cottage belonged to the Maclays, as a part of their home; (2) the circuit court erroneously denied her request for an audit of the Trust; and (3) the circuit court erroneously denied her request for attorney fees at the Trust's expense.

¶ 15. The Maclays' cross-appeal raises the following arguments: (1) the circuit court erroneously denied its motion to dismiss Lindemann's action, resulting in a costly and unnecessary litigation; (2) the circuit court erroneously found that the well and pump providing water to Hillside Cottage are improvements to Trust property, thus belonging to the Trust; and (3) the circuit court erroneously denied the Maclays' motion for attorney fees.

¶ 16. As stated, we affirm the circuit court *on the issues raised by Lindemann's appeal.* We reverse the circuit court on the issues raised by the Maclays' appeal and remand for a determination of the Maclays' attorney fees. Because the same logic applies to our discussion of the septic tank and the water system, we discuss those issues together. We also discuss the issue of each party's request for attorney fees together; however, we discuss the remaining issues separately.

*A. The septic and water systems.*

¶ 17. Lindemann contends that the circuit court erroneously declared that the septic system servicing Hillside Cottage belonged to the cottage, and thus was not an "improvement" to the Trust property. The Maclays put forth the opposite argument as to the water

system, arguing that the circuit court erroneously declared the water system an "improvement," thus belonging to the Trust, rather than to Hillside Cottage.

¶ 18. "Whether an item is an 'improvement to real property' . . . is a question of law that we review *de novo.*" *Kohn v. Darlington Cmty. Schs.*, 2005 WI 99, ¶ 12, 283 Wis. 2d 1, 698 N.W.2d 794 (citation omitted); *see also Kallas Millwork Corp. v. Square D Co.*, 66 Wis. 2d 382, 386, 225 N.W.2d 454 (1975) (holding "that the high-pressure water pipe designed for fire protection, as a matter of law, was 'an improvement to real property' ") (citation omitted).

¶ 19. An improvement to real property, as stated by the Wisconsin Supreme Court is: "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Kohn*, 283 Wis. 2d 1, ¶ 17 (citations, quotation marks and bracketing omitted). Relying on this definition, the circuit court concluded that the septic tank was not an improvement to the Trust because it was an essential part of Hillside Cottage and was installed at the time the cottage was built. The court also determined that the water system, though also a part of the cottage's initial structure and integral to the use of the cottage, was an improvement to the Trust property because it could be used by other buildings on the Trust. We conclude that neither system was an improvement to the Trust, but rather was an integral part of Hillside Cottage.

¶ 20. The Maclays built and paid for the Hillside Cottage in the 1950s. The home was built with Rene

von Schleinitz's knowledge when he was alive on a portion of what became the Cedar Lake Trust land under his will. After von Schleinitz's death in 1972, the 1975 probate judgment confirmed that Hillside Cottage was not part of von Schleinitz's Trust property. The probate judgment was entered on May 28, 1975. It became final and Lindemann never appealed.

¶ 21. The septic system was installed in the home at the time the home was built and is obviously essential to the home's functioning. It would defy logic for us to conclude that the system responsible for disposing of the cottage's wastewater from the time the cottage was built is an "improvement" belonging to an entity other than the owners of the cottage (i.e., the Trust). Accordingly, we agree with the circuit court and conclude that the septic system was not an "addition . . . as distinguished from ordinary repairs." *See id.*, ¶ 17 (citations and quotation marks omitted). Rather, the system had been an essential component to the home's structure and functioning since the 1950s, and, in accordance with the terms of von Schleinitz's will, belongs to the Maclays.

¶ 22. Applying the same logic and the same definition of "improvement," we also conclude that the water system belongs to the Maclays as it is an essential component of their home. The circuit court reasoned that because the water system could be used to provide water to other buildings on the Trust real estate, it was not exclusively a part of Hillside Cottage. The Maclays installed and paid for the well and pump as a part of their original construction contract for Hillside Cottage. The well and pump are connected to the house and run on the cottage's electricity. Even Lindemann acknowledged that the cottage has had the

water system since its construction in the 1950s. Lindemann has not established that Hillside Cottage's water system in fact supplies water to any of the other buildings on the Trust property, nor has she established that the system was an "addition" to the original home. *See id.* (citations and quotation marks omitted).

¶ 23. The circuit court applied inconsistent criteria to two utility systems equally integral to the use of the Hillside Cottage. The practical effect of the circuit court's finding suggests that the water system is an amenity that can be severed from the home. This is contrary both to the intent of the Trust—which clearly established that Hillside Cottage was the exclusive property of the Maclays—and to logic. Hillside Cottage would be uninhabitable without a functioning water system. The septic system could not function without a water supply. A legal conclusion that the septic system is part of the "improvement known as Hillside [C]ottage," while the water system upon which the septic system depends is not, is inconsistent both in law and in common sense. *See von Schleinitz Trust 1*, No. 2008AP677, unpublished slip op., ¶ 3. Both are as much utilities as the electric system and the lighting system. The record does not provide a reasonable factual basis for the circuit court's conclusion to the contrary.

¶ 24. We conclude that neither system was an improvement to the Trust real estate. Both systems are integral to the functioning of Hillside Cottage. Both systems were installed and paid for by the Maclays when they built Hillside Cottage. Without either system, they would be unable to occupy and use the cottage as they have for decades and prior to implementation of the Trust von Schleinitz created. Consequently, we conclude both systems belong to the

Maclays as a part of their home under the terms of the Trust, which states: "[T]he occupancy of any cottage shall include the right to use the grounds and other buildings customarily used with the cottage."

### B. *Lindemann's demand for accounting.*

██

¶ 25. Lindemann's next issue on appeal[5] is that the circuit court erroneously denied her request for an accounting of the Trust. Specifically, she contends that Geoffrey Sr. failed to properly record Trust expenditures and thus, "shortchanged the Trust." Whether Geoffrey Sr. indeed "shortchanged the Trust" required the circuit court to make factual determinations based on the evidence presented. We review the court's determination under the erroneous exercise of discretion standard: whether the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *See Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982).

¶ 26. Here, the circuit court found insufficient evidence to conclude that an audit was necessary and found that requiring an audit would be unnecessarily costly to the Trust. The court found credible the testimony of the Maclays' accountant, Debra Robb, who stated that an audit would place an unnecessary financial burden on the Trust. The court found financial records submitted by Geoffrey Sr., including tax returns and filings with the probate court, to be credible.

---

[5] We discuss both parties' requests for attorney fees in a separate section of this opinion.

¶ 27. The circuit court also relied on a series of emails between Lindemann and Reserve Judge Sullivan, in which Reserve Judge Sullivan expressed concern over Lindemann's audit request:

[Email from Lindemann] Dear Judge Sullivan:

. . . .

It is in my belief it is in the best interest of the trust and all the ultimate beneficiaries to have the basis information determination now. The capital gains assessments ultimately assessed to all the beneficiaries will need to be determined. The Trust began in 1972. Since that time, the records have been in sole control of my father, likely comingled with person[al] expense/improvements as he considers the property his . . . . It is wrong, (and selfish) for Maclay Sr. not to address this issue which impacts his children, the ability of his wife's estate to ultimately work it's way through Probate should she predecease, and cause tax assessments that could be unnecessarily substantial to all of his children.

[Response from Sullivan] Dear Chrissie,

I respect your position on the matters stated in your email . . . . However, I write to comment on two points with which I especially disagree . . . .

Re the "basis" issue, I also disagree . . . . This Trust generates pretty much a zero or negative income, so trust expense to discover what you seem to feel is the "real basis" is unwarranted when the Trust income can't cover the expense . . . of doing so. My further reasons for believing such expense unwarranted can be found in the paragraph below.

The life beneficiary [Edith] should not have to pay (which would be the case in this instance) for an

655

> expense that she has no interest in, that is not currently necessary to the preservation of the trust corpus and that <u>will only inure to the benefit of the residuary beneficiaries of the Trust</u>. As one [of] those residuary beneficiaries, if you wish to inquire into the issue yourself, that is your prerogative . . . . I will not participate in this line of inquiry because your mother (the life tenant) would have to pay out-of-pocket any expense involved and in my opinion such an expense would unduly encumber her enjoyment of her life estate. Furthermore, while your mother would have to "front" the expense, her payment would be a loan and eventually the Trust would have to repay her estate.

(Underlining in original.) The circuit court clearly found Reserve Judge Sullivan's observations persuasive and credible, along with the documents provided by Geoffrey and Robb's testimony. "[W]e will uphold [the circuit court's] calls as to witness credibility unless they are inherently or patently incredible." *See Dickman v. Vollmer*, 2007 WI App 141, ¶ 14, 303 Wis. 2d 241, 736 N.W.2d 202. Sufficient evidence supports the circuit court's findings.

*C. The Maclays' remaining issues in their cross-appeal.*

██

¶ 28. The heart of the Maclays' argument in their cross-appeal is that the circuit court should have granted their motion to dismiss Lindemann's action because the Stipulation and our previous decision provided the law of the case and Lindemann lacked the authority to commence this litigation pertaining to the Trust. Specifically, they contend that Lindemann was required by the Stipulation to obtain approval from a majority of the trustees prior to commencing litigation. We agree.

██

¶ 29. "Where there are two trustees, one of them cannot modify or change the determination of the trustees acting jointly." *Kluge v. Tesch*, 272 Wis. 238, 244, 75 N.W.2d 279 (1956). "No change can be made until each trustee agrees thereto. An arbitrary refusal to cooperate is cause for removal." *Id.* "If there are two or more trustees, the powers conferred upon them can properly be exercised *only by all the trustees,* unless it is otherwise provided by the terms of the trust." RESTATEMENT (FIRST) OF TRUSTS, § 194 (AM. LAW. INST. 1935) (emphasis added). "Where several trustees in a private trust have all accepted and are exercising the office, their powers, interest, and authority are equal and undivided, and they cannot act separately, but must act as a unit." 90A C.J.S.2d *Trusts* § 350 (2010).

██

¶ 30. The circuit court allowed Lindemann's litigation pursuant to WIS. STAT. § 701.14(1) (2011–12), which stated "A proceeding in the circuit court involving a living or testamentary trust may be commenced by a trustee or other person interested in the trust and, except as otherwise provided in this chapter, all probate procedure governing circuit courts, so far as it may be applicable, shall apply to such proceeding."[6] The application of § 701.14(1), however, ignores the terms of the Stipulation. It is well established that parties may waive statutory rights if the waiver is intentional, voluntary and is a clear and specific renunciation. *See Mulvaney v. Tri State Truck & Auto Body, Inc.*, 70 Wis. 2d 760, 768, 235 N.W.2d 460 (1975). Those requirements for a waiver have been met. The

---

[6] WISCONSIN STAT. § 701.14(1) (2011–12) has been repealed by 2013 Wis. Act 92, § 193.

Stipulation specifically states that one party cannot take unilateral action as it pertains to the Trust. Lindemann is a trustee. Lindemann specifically identifies herself as such in these proceedings, both at the circuit court and here.

¶ 31. The probate judgment and our prior decision comprise the law of this case and may not be relitigated in this appeal. *See State v. Stuart*, 2003 WI 73, ¶¶ 23–24, 262 Wis. 2d 620, 664 N.W.2d 82 (Under the doctrine of law of the case, a decision on a legal issue by an appellate court establishes the law of the case, which is to be followed in all subsequent proceedings in the circuit court or on later appeal, unless the evidence on a subsequent trial was substantially different, or unless controlling authority has since made a contrary decision of law applicable.). The applicability of the law of the case doctrine presents a question of law, which we review *de novo*. *See State v. Wurtz*, 141 Wis. 2d 795, 799–800, 416 N.W.2d 623 (Ct. App. 1987). Thus, we independently review whether Lindemann was prohibited by the law of this case from bringing this action. The consequence of the failure of a trustee to follow an order requiring majority support by existing trustees when a trustee claims to act on behalf of the trust appears to be one of first impression in the State of Wisconsin.

¶ 32. Lindemann signed a Stipulation agreeing to the appointment of a third trustee, and agreeing that any action by the trustees *must* be by *majority agreement* of the three trustees.[7] The Stipulation was signed and consented to by all trustees, the present

___

[7] Lindemann was represented by counsel when she entered into the Stipulation. Lindemann's counsel also signed the Stipulation.

beneficiary, and all contingent beneficiaries of the Trust. On October 5, 2011, the circuit court signed an order adopting that Stipulation and appointing Reserve Judge Sullivan as the third trustee. Lindemann did not appeal or request reconsideration of the order. *See Butcher v. Ameritech Corp.*, 2007 WI App 5, ¶ 44, 298 Wis. 2d 468, 727 N.W.2d 546. As such, the existing court order adopting the Stipulation is a part of the law of this case.

¶ 33. Approximately four months later, Lindemann, claiming to act "as a trustee of the Von Schleinitz Trust," but over the specific objection of the other two trustees, filed the petition underlying this appeal. The Maclays promptly moved to dismiss Lindemann's action. Both of the co-trustees, Rip Maclay and Reserve Judge Sullivan, refused to support the action. Rip filed an affidavit in support of the motion to dismiss, explaining his objections. Reserve Judge Sullivan explained his objections in a series of emails with Lindemann.

¶ 34. The circuit court judge involved in the petition now on appeal is the sixth circuit court judge[8] to preside over litigation about this Trust involving Lindemann. The mediation, and Stipulation resulting therefrom, were intended to stem the tide of persistent litigation surrounding this Trust. The circuit court itself acknowledged Lindemann's lack of authority when it found that Lindemann knew a majority of the trustees had to authorize any action on behalf of the Trust, "but she chose to ignore the agreement [and

---

[8] The Honorable Thomas Cooper was the first judge assigned this matter. He was followed by The Honorable Joseph Donald, The Honorable John DiMotto, The Honorable Michael Dwyer, The Honorable Mel Flanagan, and, as relevant to this appeal, The Honorable Jane Carroll.

659

court order] to not take unilateral action." In the face of Lindemann's refusal to follow the court order, and in the face of specific objections to the litigation by the majority of trustees, the court should have dismissed Lindemann's petition. This is exactly the type of situation the law of the case doctrine was designed to prevent.

### D. Attorney Fees.

¶ 35. Both Lindemann and the Maclays argue that they are entitled to attorney fees. Lindemann argues that she was entitled to attorney fees from the Trust. We agree with the circuit court's denial of Lindemann's request. However, we disagree with the circuit court that the Maclays were not entitled to attorney fees from Lindemann. Accordingly, we remand to the circuit court for a determination of the Maclays attorney fees.

¶ 36. Whether to award or deny attorney fees to a trustee is within the discretion of the circuit court. *See Kluge*, 272 Wis. at 245. A discretionary determination, to be sustained, however, must be based on facts appearing in the record and in reliance on the appropriate and applicable law. *Milwaukee Women's Med. Serv., Inc. v. Scheidler*, 228 Wis. 2d 514, 524, 598 N.W.2d 588 (Ct. App. 1999). Whether discretion was properly exercised is a question of law. *Luciani v. Montemurro-Luciani*, 199 Wis. 2d 280, 294, 544 N.W.2d 561 (1996).

¶ 37. We agree with the circuit court that Lindemann is not entitled to attorney fees. As the circuit court noted, the litigation underlying this appeal—

commenced by Lindemann—was a direct violation of the Stipulation. As stated, the Stipulation was adopted by the circuit court and became a final order. Our previous decision and the adopted Stipulation were meant to settle all matters concerning the distribution of the Trust property. Lindemann did not seek to reconsider or modify the Stipulation. Rather, she unilaterally launched this litigation in clear violation of the Stipulation. To grant Lindemann attorney fees for her violation would be both unfair to the Trust and simply nonsensical.

¶ 38. We conclude that the circuit court applied an incorrect theory of law when it denied the Maclays' request for attorney fees from Lindemann. The Maclays filed a timely motion to dismiss which, as we have explained, should have been granted.

¶ 39. The circuit court's factual basis for denying the Maclays' motion is also incorrect. The circuit court stated that the Maclays' motion was untimely because it was filed the day before the end of trial and the motion was not pled. The record does not support either finding. The Maclays' initial request for attorney fees was made when they filed their motion to dismiss. The Maclays raised the issue again at the close of the evidentiary record—six weeks prior to the final hearing in the case. They again raised the issue in their proposed findings of fact and conclusion of law, submitted to the court ten days before the final hearing. The record does not support the circuit court's finding that the motion for attorney fees was first filed the day before the close of the trial. Accordingly, we remand for a determination of the attorney

fees due to the Maclays because of Lindemann's unauthorized commencement and continuation of this proceeding.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded with instructions.