COURT OF APPEALS
DECISION
DATED AND FILED

May 13, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2023AP221**

**STATE OF WISCONSIN**

Cir. Ct. No.  2021CV193

**IN COURT OF APPEALS
DISTRICT III**

STEPHANIE JASTER,

    PLAINTIFF-APPELLANT,

V.

SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA,

    DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Eau Claire County: MICHAEL A. SCHUMACHER, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

¶1    HRUZ, J.  Stephanie Jaster appeals a judgment that awarded her automobile insurer, Selective Insurance Company of South Carolina, $21,602.99 on Selective's subrogation claim against Jaster.  Jaster contends that under the terms of her automobile insurance policy, Selective unambiguously waived its contractual

right to subrogation, and it therefore could not recover from her.  We agree with Selective and the circuit court, however, that nowhere in the policy did Selective waive its statutory right to subrogation under the Minnesota No-Fault Automobile Insurance Act ("the Act"), MINN. STAT. §§ 65B.41-65B.71 (2024).[1]  We therefore affirm.

## BACKGROUND

¶2      Jaster was involved in a motor vehicle accident in Eau Claire County on May 4, 2018.  At the time of the accident, Jaster, a Minnesota resident, had an automobile insurance policy issued by Selective.  As required by the Act, the Selective policy provided Jaster with personal injury protection (PIP) coverage, including coverage for Jaster's medical expenses and lost income.[2]  *See* MINN. STAT. § 65B.44, subd. 1.  Following the accident, Selective paid Jaster PIP benefits pursuant to its policy.

¶3      Thereafter, on April 15, 2021, Jaster settled her claims against the other driver involved in the accident and his insurer, American Family Mutual Insurance Company.  Under the settlement agreement, Jaster agreed "to indemnify and hold harmless the released parties for any claims or liens of medical providers, insurance carriers, units of government, or other entities which may have liens or

---

[1]  All references to the Minnesota Statutes are to the 2024 version.

[2]  The Act requires "automobile insurers to offer and automobile owners to maintain automobile insurance policies … which will provide prompt payment of specified basic economic loss benefits to victims of automobile accidents without regard to whose fault caused the accident." *See* MINN. STAT. § 65B.42, subd. 1.  These "basic economic loss benefits" are sometimes referred to as PIP benefits.  The required PIP benefits under the Act are: (1) "$20,000 for medical expense loss arising out of injury to any one person"; and (2) "a total of $20,000 for income loss, replacement services loss, funeral expense loss, survivor's economic loss, and survivor's replacement services loss arising out of the injury to any one person."  MINN. STAT. § 65B.44, subd. 1.

2

subrogation rights arising from this accident." The settlement agreement further provided: "I agree any said liens or claims are my sole responsibility and will satisfy any liens out of the settlement proceeds." In addition, the agreement stated: "The parties have agreed to satisfy all subrogation claims/liens out of the settlement proceeds, specifically but not limited to valid subrogation claims/liens for Selective Insurance Co PIP subrogation." The agreement also stated that the settlement proceeds paid to Jaster were "over and above any and all [PIP] benefits" and did not "duplicate" those benefits.

¶4 On May 3, 2021, Selective commenced the instant lawsuit in Eau Claire County against American Family and its insured driver, seeking to recover the PIP benefits that it had paid to Jaster. Jaster then filed suit against Selective in La Crosse County, seeking a declaratory judgment that Selective was not entitled to subrogation. The La Crosse County case was subsequently transferred to Eau Claire County, and the two cases were consolidated.

¶5 Jaster and Selective filed cross-motions for partial summary judgment. In her motion, Jaster sought "partial summary judgment dismissing Selective's claims against American Family and its insured based upon" the settlement agreement. The circuit court granted Jaster's motion and dismissed Selective's claims against American Family and its insured. The dismissal of those claims is not at issue on appeal.

¶6 Selective's motion for partial summary judgment, in turn, argued that Selective had a right to subrogation under the Act because "for accidents occurring outside of the State of Minnesota, [the Act] allows for recovery [by the insurer] to the extent the insured has double recovered." Selective further argued that Jaster had "double recovered" because the settlement proceeds that she received from

American Family duplicated the PIP benefits that Selective had already paid her. In response, Jaster argued that Selective was not entitled to partial summary judgment because Selective had failed to show that Jaster "made a double recovery via her settlement with American Family" and its insured.

¶7 The circuit court denied Selective's partial summary judgment motion and directed the parties to file briefs on the issue of whether the settlement with American Family and its insured made Jaster whole. *See **Rimes v. State Farm Mut. Auto. Ins. Co.***, 106 Wis. 2d 263, 272, 316 N.W.2d 348 (1982) (holding that an insurer "is not entitled to subrogation unless the insured has been made whole for his [or her] loss"). In her response to Selective's ***Rimes*** brief, Jaster argued, for the first time, that Selective had waived its right to subrogation because the policy "expressly and affirmatively remove[d] [Selective's] right to reimbursement on [PIP] benefits." Consequently, Jaster argued that the circuit court "d[id] not need to examine the 'made whole' issue because [Selective was] precluded from any recovery by the terms of the policy."

¶8 Following briefing and oral argument by the parties, the circuit court concluded that Selective had waived "any [subrogation] rights that [it] may have had under the terms of the policy." The court also concluded, however, that Selective had a "statutory right of subrogation" under the Act, which Selective had not waived. The court then concluded that Jaster "was indeed made whole under the terms of" her settlement with American Family and its insured. Accordingly,

the court determined that Selective was "entitled to judgment against … Jaster in the amount of $21,602.99." Jaster now appeals.[3]

## DISCUSSION

¶9     This appeal requires us to determine whether Selective, pursuant to the terms of the automobile insurance policy that it issued to Jaster, waived its subrogation rights, including those provided in the Act. "The interpretation of an insurance policy presents a question of law that we review de novo." *Marotz v. Hallman*, 2007 WI 89, ¶33, 302 Wis. 2d 428, 734 N.W.2d 411. When interpreting an insurance policy, our objective is to give effect to the parties' intent. *Id.*, ¶34. "Insurance polices are construed as they would be understood by a reasonable person in the position of the insured." *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65. If policy language is ambiguous—that is, susceptible to more than one reasonable interpretation—we will construe that language in favor of the insured. *Folkman v. Quamme*, 2003 WI 116, ¶13, 264 Wis. 2d 617, 665 N.W.2d 857.

¶10     The policy at issue in this case includes several provisions that are relevant to Selective's subrogation rights.[4] First, "Part F—General Provisions" in

---

[3] We pause to note that the parties' briefs do not comply with WIS. STAT. RULE 809.19(8)(bm) (2023-24), which requires a brief to "have page numbers centered in the bottom margin using Arabic numerals with sequential numbering starting at '1' on the cover." Our supreme court has explained that this pagination requirement "will match the page number to the page header applied by the eFiling system, avoiding the confusion of having two different page numbers." S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021). We admonish the parties' attorneys that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2) (2023-24).

[4] When quoting from Selective's policy, we omit unnecessary capitalization and boldface type.

the main policy includes a section entitled "Our Right to Recover Payment," which provides:

> A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:
>
>> 1. Whatever is necessary to enable us to exercise our rights; and
>>
>> 2. Nothing after loss to prejudice them.
>
>  ….
>
> B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:
>
>> 1. Hold in trust for us the proceeds of the recovery; and
>>
>> 2. Reimburse us to the extent of our payment.

¶11   The policy also includes an "Amendment of Policy Provisions—Minnesota" (hereinafter, "Minnesota amendment"), which adds language to the main policy's "Our Right to Recover Payment" provision. None of the additional language in the Minnesota amendment appears to be relevant to the parties' dispute in this case.

¶12   In addition, the policy includes an endorsement entitled "Personal Injury Protection Coverage—Minnesota" (hereinafter, "PIP endorsement"). The PIP endorsement states, in relevant part: "We will pay, in accordance with the Minnesota No-Fault Automobile Insurance Act, personal injury protection benefits to or for an 'insured' who sustains 'bodily injury.'" The PIP endorsement further provides: "The Our Right To Recover Payment Provision does not apply."

¶13    Jaster argues that, when read together, these provisions unambiguously show that Selective "waived [its] right to subrogation."  According to Jaster, "Selective established its subrogation rights" in the "Our Right to Recover Payment" provision in the main policy.  Jaster asserts, correctly, that the Minnesota amendment to the policy "modified, but did not eliminate," Selective's right to subrogation.  Jaster contends, however, that the PIP endorsement "clearly stated" that the "Our Right to Recover Payment" provision "does not apply."  Consequently, according to Jaster, "[t]he common, ordinary, and reasonable interpretation of the PIP [e]ndorsement … must be that Selective waived [its] right to subrogation for paid PIP benefits."  Alternatively, Jaster asserts that even if the PIP endorsement is ambiguous with respect to Selective's right to subrogation, it "must be interpreted in favor of the insured."

¶14    Like the circuit court, we agree with Jaster that by virtue of the PIP endorsement, Selective waived its right to subrogation for PIP benefits as set forth in the policy's "Our Right to Recover Payment" provision and as modified by the Minnesota amendment.  In other words, the PIP endorsement waived Selective's *contractual* right to subrogation as provided elsewhere in the policy.

¶15    We also agree with the circuit court, however, that nowhere in the policy did Selective waive its separate *statutory* right to subrogation under the Act.  As noted above, the policy expressly states that Selective will pay PIP benefits "in accordance with" the Act.  The Act, in turn, provides insurers with limited subrogation rights.  *See* MINN. STAT. § 65B.53.  As relevant here, when an accident occurs outside of Minnesota and an insurer pays PIP benefits to its insured, the insurer "is subrogated to" the insured's claim for recovery of damages against a third-party tortfeasor, but "only to the extent that recovery on the [insured's] claim

absent subrogation would produce a duplication of benefits or reimbursement of the same loss." *See* § 65B.53, subd. 2.

¶16    Accordingly, under the Act, Selective had a statutory right to subrogation after it paid PIP benefits to Jaster for damages caused by an accident that occurred outside of Minnesota, as long as, absent subrogation, Jaster's recovery from a third-party tortfeasor would be duplicative.  Jaster points to no language in the policy waiving this *statutory* right to subrogation, as opposed to the *contractual* right to subrogation found in the policy's "Our Right to Recover Payment" provision.

¶17    Waiver refers to "the intentional relinquishment or abandonment of a known right." *State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (citation omitted).  Under Wisconsin law, a party may waive a statutory right "if the waiver is intentional, voluntary and is a clear and specific renunciation." *Trust of Rene von Schleinitz v. Maclay*, 2016 WI App 4, ¶30, 366 Wis. 2d 637, 874 N.W.2d 573 (2015).  Stated differently, a party intentionally relinquishes a statutory right "by affirmative acts unambiguously demonstrating that [the party's] conduct is intentionally undertaken and meant to give up the right." *Brunton v. Nuvell Credit Corp.*, 2010 WI 50, ¶38, 325 Wis. 2d 135, 785 N.W.2d 302.

¶18    Similarly, under Minnesota law, "[w]aiver of a statutory right requires two elements: (1) knowledge of the right, and (2) the intent to waive the right." *Safety Signs, LLC v. Niles-Wiese Constr. Co.*, 840 N.W.2d 34, 42 (Minn. 2013).  The intent to waive a statutory right "cannot be inferred from 'mere inaction'; instead there must be 'an expression of intent to relinquish the right at issue.'" *Id.* (citation omitted).  Under both Minnesota and Wisconsin law, the burden of proving waiver rests on the party asserting it.  *See id.*; *Brunton*, 325 Wis. 2d 135, ¶¶37-38.

¶19    Thus, under either Wisconsin or Minnesota law, in order to establish that Selective waived its statutory right to subrogation under the Act, Jaster was required to show that Selective made a clear and specific renunciation of that right or, stated differently, an expression of intent to relinquish the right. Jaster has not made this showing. Again, Jaster points to no language in the policy by which Selective made a clear and specific renunciation of its statutory right to subrogation or expressed its intent to relinquish that right. Nor does Jaster point to any conduct by Selective evidencing the requisite intent to relinquish its statutory right to subrogation.

¶20    Instead, Jaster emphasizes that Selective could have chosen to add a subrogation provision to the policy that was consistent with the subrogation rights allowed under the Act. Because Selective failed to do so, Jaster infers that Selective waived its right to subrogation. As noted above, however, the intent to waive a statutory right "cannot be inferred from 'mere inaction.'" *See **Safety Signs***, 840 N.W.2d at 42. We decline to interpret the absence of a policy provision reiterating Selective's preexisting statutory subrogation rights under the Act as establishing an intentional waiver of those rights.

¶21    Jaster also cites ***Trust of Rene von Schleinitz*** in support of the proposition that Selective waived its statutory right to subrogation. In that case, parties to a dispute involving a trust entered into a stipulation that provided, among other things: "A single trustee shall not take unilateral action regarding the Trust or its assets except as provided herein." ***Trust of Rene von Schleinitz***, 366 Wis. 2d 637, ¶6. The probate court approved the stipulation and incorporated it into a final order. ***Id.*** Thereafter, one of the trust's three trustees filed a lawsuit seeking a declaratory judgment that certain property belonged to the trust. ***Id.***, ¶7. Other parties moved to dismiss, arguing that the lawsuit violated the stipulation

prohibiting any single trustee from taking unilateral action regarding the trust. *Id.*, ¶8. The circuit court denied the motion to dismiss, concluding that the trustee had a right to file the lawsuit under WIS. STAT. § 701.14(1) (2011-12). *Trust of Rene von Schleinitz*, 366 Wis. 2d 637, ¶8.

¶22 On appeal, we concluded that the circuit court should have granted the motion to dismiss the trustee's lawsuit based upon the parties' stipulation. *Id.*, ¶28. We reasoned that the court's application of WIS. STAT. § 701.14(1) (2011-12) "ignore[d] the terms of the [s]tipulation," which "specifically state[d] that one party [could not] take unilateral action as it pertain[ed] to the Trust." *Trust of Rene von Schleinitz*, 366 Wis. 2d 637, ¶30. In other words, the stipulation was a "specific renunciation" of the trustee's statutory right to initiate litigation regarding the trust. *Id.*

¶23 *Trust of Rene von Schleinitz* is materially distinguishable from this case. There, the parties entered into a stipulation that was expressly contrary to the statute permitting a trustee to commence litigation regarding a trust. Although the stipulation did not specifically reference that statute, it clearly overrode the statute's contrary terms. Here, in contrast, the policy's PIP endorsement merely states that the policy's "Our Right To Recover Payment" provision "does not apply." The PIP endorsement does not state that Selective's statutory right to subrogation under the Act does not apply. To the contrary, the PIP endorsement expressly states that Selective will pay PIP benefits "in accordance with" the Act.[5] Under these

---

[5] In her reply brief, Jaster argues that Selective's obligation under the PIP endorsement to pay PIP benefits "in accordance with" the Act does not mean "that Selective will also *be subrogated* or rather, *be paid*, in accordance with" the Act. We disagree. An insurer's obligation to pay benefits under the Act and its corresponding right to subrogation under the Act go hand in hand.

circumstances, we reject Jaster's argument that the PIP endorsement waived Selective's statutory right to subrogation under the Act.

¶24    Jaster also asserts that the circuit court improperly "award[ed] Selective equitable subrogation." "Subrogation, in addition to being a product of the parties' contract, may also exist by operation of law, that is, equitable subrogation." *Employers Health Ins. v. General Cas. Co. of Wis.*, 161 Wis. 2d 937, 955, 469 N.W.2d 172 (1991). "Thus, even in the absence of an express subrogation agreement, an indemnity insurer may still be entitled to receive subrogation." *Id.*

¶25    Jaster argues that a court can apply equitable subrogation "[o]nly when a contract does not contain an express subrogation clause." Jaster fails to acknowledge, however, that there are actually three types of subrogation: (1) contractual subrogation; (2) equitable subrogation; and (3) statutory subrogation. *See Steffens v. BlueCross BlueShield of Ill.*, 2011 WI 60, ¶37, 335 Wis. 2d 514, 804 N.W.2d 196. Here, the circuit court determined that Selective was entitled to statutory subrogation under the Act. "Statutory subrogation, as the name suggests, is nothing more or less than subrogation arising by operation of statute." *Millers Nat'l Ins. Co. v. City of Milwaukee*, 184 Wis. 2d 155, 169, 516 N.W.2d 376 (1994). Jaster cites no legal authority in support of the proposition that statutory subrogation is permissible only when an insurance policy does not contain an express subrogation provision.[6]

---

[6] In addition, we question Jaster's premise that equitable subrogation is permissible only when an insurance policy does not contain an express subrogation provision. Notably, our supreme court has stated:

¶26　For these reasons, we reject Jaster's argument that the circuit court erred by determining that Selective was entitled to statutory subrogation under the Act. Notably, on appeal, Jaster does not dispute that the settlement proceeds she received from American Family duplicated the PIP benefits that Selective paid her. *See* MINN. STAT. § 65B.53, subd. 2. In addition, Jaster does not challenge the court's determination that her settlement with American Family and its insured made her whole. *See **Rimes***, 106 Wis. 2d at 272. We therefore affirm the court's judgment awarding Selective $21,602.99 on its subrogation claim.

> *By the Court.*—Judgment affirmed.

> Not recommended for publication in the official reports.

---

> If there is no express subrogation clause in the contract, *or if, despite the presence of a subrogation clause there is some question in equity about whether subrogation should be imposed*, then the policy and the circumstances must be analyzed to determine whether there is a basis for equitable subrogation.

***Jindra v. Diederich Flooring***, 181 Wis. 2d 579, 604, 511 N.W.2d 855 (1994) (emphasis added).